UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NICOLAS AQUINO,<br><br>              Plaintiff,<br><br>      v.<br><br>COUNTY OF MONTEREY SHERIFF'S DEPARTMENT, et al.,<br><br>              Defendants. | Case No.  5:14-cv-03387-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 37, 38 |

Plaintiff Nicolas Aquino ("Plaintiff") brings this action against Monterey County Sheriff's Office (sued herein as County of Monterey Sheriff's Department) ("Monterey County"), Sheriff's Deputy Ivan Rodriguez ("Dep. Rodriguez"), and Sheriff's Sergeant David Murray ("Sgt. Murray") (collectively, "Defendants") for alleged violations of his Fourth Amendment rights and related state law claims.  Compl. ¶ 1, Dkt. No. 1.  Presently before the court is Defendants' Motion for Summary Judgment ("Def. Mot") and Plaintiff's Motion for Partial Summary Judgment ("Pl. Mot").  Dkt. Nos. 37, 38.  Defendants move for summary judgment on all claims, and Plaintiff moves for partial summary judgment as to claims one, two, four, seven, eight, and eleven.

Based on the parties' briefings and the arguments of counsel, and for the reasons stated below, the court has determined summary judgment is appropriate as to some, but not all, of the claims presented.  Thus, both Defendants' motion for summary judgment and Plaintiff's motion for partial summary judgment will be GRANTED IN PART and DENIED IN PART.

United States District Court
Northern District of California

## I.   BACKGROUND

The events giving rise to Plaintiff's claims occurred during the course of Dep. Rodriguez's investigation into a 911 call reporting suspicious activity at Plaintiff's residence on the morning of December 13, 2013.  The following relevant facts are taken primarily from the parties' declarations, deposition testimony, and separate statements, and are undisputed unless otherwise noted.

Plaintiff Nicolas Aquino is a Captain in the United States Air Force and is a resident of Monterey County, California.  Decl. of Nicolas Aquino ("Aquino Decl.") ¶ 1, Dkt. No. 37-3.  In early 2013, Plaintiff leased a residence at 24591 Portola Avenue, in Carmel, California, where he was living on December 13, 2013.  Aquino Decl. ¶ 3.

The Monterey County Sheriff's Office is a law enforcement agency in Monterey County, California.  Defendant Dep. Rodriguez is, and at all times relevant here was, employed as a deputy sheriff by Monterey County.  Depo. of Ivan Rodriguez ("Rodriguez Depo.") at 62:7-12; 66:15-19, Dkt. No. 37-2.  Defendant Sgt. Murray is, and at all times relevant here was, employed as a sergeant by Monterey County.  Defs.' Resp. to Pl.'s Fact ("Pl. Fact") 98, Dkt. No. 40-2.

### A.   The 911 Call

On the morning of December 13, 2013, at approximately 10:55 a.m., Dep. Rodriguez responded to a 911 call regarding a potentially suspicious individual at 24591 Portola Avenue, Carmel, California.  Pl. Fact 8.  The 911 caller reported that a Hispanic male wearing a brown hoodie was on the property, had approached the front door, walked around to the side, returned to the front, and was now inside the residence.  Pl. Fact 8.  The caller identified himself as "Chris," but did not provide a last name and no further information about the caller was noted by the dispatcher.  Pl. Fact 8.  The caller also stated that he was not sure if the man was a visitor, but said that he had not seen him before.  Pl. Fact 8.

When Dep. Rodriguez arrived in the area, he spoke with a white male across the street from 24591 Portola Avenue who told Dep. Rodriguez that he had seen a "suspicious" person, and

1    directed Dep. Rodriguez to Plaintiff's residence.  Rodriguez Depo. at 68:18-69:7; 70:14-71:6.  The

2    man's identity was unknown at the time of contact but he was later identified as Christopher

3    Adamski ("Adamski").  Id. at 71:15-17; 100:1-101:8; Pl. Fact 14.

4        **B.    Dep. Rodriguez's Inspection of the Portola Avenue Property**

5            After speaking with Adamski, Dep. Rodriguez approached the Portola Avenue property

6    and looked over the north gate and into the backyard for signs of forced entry.  Rodriguez Depo. at

7    71:23-25; 72:2-8;  Pl. Fact 21.  He did not discover any evidence of a break-in and saw "nothing

8    broken, nothing forced, [and] nothing suspicious."  Rodriguez Depo. at 72:12-16.  Dep. Rodriguez

9    then proceeded to the opposite side of the property, looked over the southern fence, and again

10   found no evidence of forced entry.  Id. at 74:2-12; 75:8-13.  While in front of the house, he

11   observed someone visible in one of the front windows and saw the shutters close, obscuring any

12   further view inside.  Id. at 74:11-20.  Based on this observation, Dep. Rodriguez decided to retreat

13   from the property, return to his patrol car, and await backup.  Id. at 76:3-18.

14           As Dep. Rodriguez was leaving, Plaintiff opened the front door and inquired as to his

15   presence on the property.  Aquino Decl. ¶ 7; Depo. of Nicolas Aquino ("Aquino Depo.") at 69:12,

16   Dkt. No. 38-2.  Dep. Rodriguez believed Plaintiff matched the description of the man from the 911

17   call in that he was a Hispanic male wearing a hooded sweatshirt.  Pl. Fact 30.   Dep. Rodriguez

18   informed Plaintiff that he was investigating a report of suspicious activity in the area and asked

19   Plaintiff who he was.  Rodriguez Depo. at 82:1-24; Aquino Decl. ¶ 9.  Plaintiff responded that he

20   lived on the property, at which point Dep. Rodriguez requested to see Plaintiff's identification.

21   Rodriguez Depo. at 82:13-83:11.  Plaintiff then asked Dep. Rodriguez if he was being detained;

22   why Dep. Rodriguez was asking him for identification; and whether Dep. Rodriguez had a

23   warrant.  Rodriguez Depo. 83:25-84:8; Pl.'s Resp. to Defs.' Fact ("Def. Fact") 7, Dkt. No. 41-1.

24   Dep. Rodriguez responded that Plaintiff was being detained until Dep. Rodriguez could determine

25   if Plaintiff lived on the property and that he was requesting Plaintiff's identification in order to

26   confirm this.  Rodriguez Depo. at 84:9-15.

27

28
     Case No.: 5:14-cv-03387-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
     JUDGMENT

In response, Plaintiff pulled out his wallet, verbally informed Dep. Rodriguez that he was in the military, [1] and showed Dep. Rodriguez his military issued ID card.  Pl. Fact 46; Aquino Decl. ¶ 14.  There is some dispute as to the manner in which Plaintiff presented the ID card to Dep. Rodriguez, but the parties generally agree that (1) Plaintiff took out and visibly displayed the ID card for Dep. Rodriguez to see; (2) Plaintiff did not actually hand Dep. Rodriguez the card itself; (3) Dep. Rodriguez stepped forward and reached out toward Plaintiff to take the ID card; (4) Plaintiff moved his hand away, preventing Dep. Rodriguez from acquiring the ID card;  and (5) a physical altercation ensued.  Rodriguez Depo. at 90:13-92:21; Aquino Decl. ¶¶ 14-15.

**C.    Physical Altercation Between Dep. Rodriguez and Plaintiff**

As a result of Plaintiff's refusal to hand over his ID, Dep. Rodriguez states that he became concerned for his safety and, believing Plaintiff may actually be a burglar, decided to physically detain him in handcuffs.  Rodriguez Depo. at 92:23-93:15; Def. Mot. at 4.  In an effort to do so, Dep. Rodriguez "lunged toward [Plaintiff] … to grab his [right] wrist," then grabbed his left wrist and moved behind Plaintiff trying to get his hands behind his back.  Rodriguez Depo. at 126:2-25; Aquino Decl. ¶ 18; Pl. Facts 58, 60.  Plaintiff then "spun" toward Dep. Rodriguez with his body slightly bent forward.  Rodriguez Depo. at 127:1-5; Aquino Decl. ¶ 18.  While Defendants contend Plaintiff was resisting Dep. Rodriguez's attempt to handcuff him, Plaintiff states that he was thrown off balance by Dep. Rodriguez's actions and was not resisting.  Def. Fact 10; Aquino Decl. ¶ 18; Pl. Opp. to Def. Mot. ("Pl. Opp.") at 6-7, Dkt. No. 41.  At that point, Dep. Rodriguez "wrapped [his] right arm around [Plaintiff's] head and neck," dragging him to the ground.  Rodriguez Depo. at 129:1-6; 130:20-23; Aquino Decl. ¶ 19.

While there is some dispute as to the details of what happened next, it appears that once on the ground, Dep. Rodriguez ordered Plaintiff to get on his stomach and place his hands out at his side, which Plaintiff failed to do.  Rodriguez Depo. at 130:24-132:11; Pl. Fact 62; Def. Fact 10.  Maintaining a hold on Plaintiff's head and neck, Dep. Rodriguez then used his body weight to

---

[1] Dep. Rodriguez did not recall Plaintiff saying he was in the military.  Rodriguez Depo. 83:3-7.

Case No.: 5:14-cv-03387-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
JUDGMENT

1   push Plaintiff into the ground, pinning his arms and hands underneath him.[2]  Aquino Decl. ¶¶ 19-
2   20; Pl. Opp. at 6-7; see also Rodriguez Depo. at 130:24-132-11.

3          After unsuccessfully attempting to handcuff Plaintiff in this position, a civilian,
4   subsequently identified as Rafael Salcedo, "appeared out of nowhere" and grabbed Plaintiff's left
5   arm.  Rodriguez Depo. at 132:20-133:6; Pl. Fact 65.  Moments later, Monterey Sheriff's deputy
6   Albert Ainuu ("Dep. Ainuu"), arrived and they successfully handcuffed Plaintiff and placed him in
7   the back of Dep. Rodriguez's patrol car. Rodriguez Depo. at 133:6-24.; Pl. Facts 65-67.

8          **D.    Alleged Search of Plaintiff's Wallet and Residence**

9          After handcuffing and placing Plaintiff in his patrol car, Dep. Rodriguez picked up
10  Plaintiff's wallet and ID card that had fallen onto the ground during the struggle and looked at the
11  items.  Rodriguez Depo. at 137:22-138:15; Pl. Fact 71.  Upon review of the items, Dep. Rodriguez
12  identified what he believed to be a military ID, as well as a Texas driver's license and a Naval
13  Postgraduate identification card.  Rodriguez Depo. at 138:14-140:1.  When the wallet was later
14  returned to Plaintiff, Plaintiff alleges that fifty dollars was missing.  Aquino Depo. at 148: 21-25.

15         After looking at Plaintiff's identification, Dep. Rodriguez left the patrol car and "went
16  looking for people who could verify" that Plaintiff lived on the property.  Rodriguez Depo. at
17  143:2-14.; Def. Facts 14-16.  While none of the of the neighbors who spoke with Dep. Rodriguez
18  identified Plaintiff as the occupant of the house, one recalled that the resident of the property went
19  by the name "Nico," which Dep. Rodriguez recognized could be short for "Nicolas,' Plaintiff's
20  first name.  Def. Facts 15-16.

21         Around this time, Plaintiff appears to allege - and Defendants appear to dispute - that Dep.
22  Rodriguez entered Plaintiff's residence without his consent and retrieved a utility bill from inside

23

24  _____
    [2] There is also some dispute as to whether Dep. Rodriguez's actions caused Plaintiff to hit his head
25  on the pavement.  Plaintiff alleges that it did, and that he lost visual and auditory awareness for a
    few seconds.  Aquino Decl. ¶ 19; Pl. Fact. 63.  Defendants purportedly dispute this fact by citing
26  "Aquino depo. 107:6-8," but the court was unable to locate this section of testimony in the record
    and no further docket number of identifying information was provided by Defendants.  See Dkt.
27  No. 40-2, at 10, Pl. Fact 63.

5

28  Case No.: 5:14-cv-03387-EJD
    ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
    JUDGMENT

United States District Court
Northern District of California

the house.  Compl. ¶17; Pl. Facts 75, 76; Def. Facts 17, 18, 28; Rodriguez Depo. at 148:23-25.

There are internal inconsistencies in the arguments and evidence presented by both parties on this

issue.  See Pl. Facts 75-76; Def. Facts 17-18.[3]  However, it is undisputed that at some point Dep.

Rodriguez returned to the patrol car, removed Plaintiff's handcuffs, and allowed him to enter the

house and obtain utility bills himself, which showed that he was the lawful resident.  Id.  Dep.

Rodriguez then gave Plaintiff a sheet of paper with a report number, released him, and left the area

with Dep. Ainuu.  See Def. Facts 18-20.

## II.   LEGAL STANDARD

A motion for summary judgment or partial summary judgment should be granted if "there

is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of

law."  Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A

fact is material when, under governing substantive law, it could affect the outcome of the case.

Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine

if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

The moving party bears the initial burden of informing the court of the basis for the motion

and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions,

or affidavits that demonstrate the absence of a triable issue of material fact.  Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this initial burden, the burden then

shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing

that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324.  The court

must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary

material.  Celotex, 477 U.S. at 324.  However, the mere suggestion that facts are in controversy, or

---

[3] See also, Supplemental Report of Dep. Ainuu ("Ainuu Report"), Ex. D at 9, Avila Decl., Dkt.
No. 41-3; Depo. of Albert Ainuu ("Ainuu Depo.") at 71:15-75:21, Ex. G, Avila Decl. Dkt. No. 41-
3.  Initially, Dep. Ainuu recalled that Dep. Rodriguez had been the one to "recover" documents
with Plaintiff's name from inside the house.  He later claimed he could not remember how Dep.
Rodriguez got the documents, but given that Plaintiff was in the patrol car, stated he did not know
how else Dep. Rodriguez would have obtained the document other than by entering the residence.

Case No.: 5:14-cv-03387-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
JUDGMENT

conclusory and speculative testimony in affidavits and moving papers, is insufficient to defeat

summary judgment.  See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

Where the nonmoving party will have the burden of proof at trial on an issue, the moving

party need only point out "that there is an absence of evidence to support the nonmoving party's

case." Celotex, 477 U.S. at 325.  Provided there has been adequate time for discovery, summary

judgment should be entered against a party who fails to make a showing sufficient to establish the

existence of an essential element to that party's case. Id. at 322-23.  "[A] complete failure of

proof concerning an essential element of the nonmoving party's case necessarily renders all other

facts immaterial." Id. at 323.

## III.    DISCUSSION

### A.     § 1983 Claim Against Dep. Rodriguez (Claim One)

Plaintiff's first cause of action alleges that Dep. Rodriguez violated his Fourth Amendment

rights to be free from unreasonable searches and seizures, as well as his right to be free from the

excessive use of force.  Defendants move for summary judgment on the grounds that Dep.

Rodriguez had reasonable suspicion to detain Plaintiff for the purposes of investigation, used

reasonable force in doing so, and because he has no liability under the doctrine of qualified

immunity.  Plaintiff also moves for summary judgment on the § 1983 claim.

#### i.     Unreasonable Seizures

Plaintiff alleges that Dep. Rodriguez lacked any legal basis to verbally or physically detain

him, and therefore he was unlawfully seized in violation of the Fourth Amendment.  Defendants

assert that the facts and circumstances surrounding Dep. Rodriguez's encounter with Plaintiff

established reasonable suspicion to detain Plaintiff in conjunction with the investigation of the 911

call reporting a suspicious person on the property.

##### a.  Initial Investigatory Detention

Under the Supreme Court precedent set in Terry v. Ohio, a police officer may detain a

suspect for limited investigative purposes if the officer has reasonable suspicion the suspect was

Case No.: 5:14-cv-03387-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
JUDGMENT

United States District Court
Northern District of California

1   engaged in criminal activity. 392 U.S. 1, 20-21 (1968); see United States v. Hensley, 469 U.S.

2   221, 229 (1985).  The reasonable suspicion standard "is a less demanding standard than probable

3   cause, and merely requires a minimal level of objective justification."  Gallegos v. City of Los

4   Angeles, 308 F.3d 987, 990 (9th Cir. 2002) (internal quotations omitted).  The scope of a

5   permissible Terry-stop has been expanded to include "asking the detainee a moderate number of

6   questions to determine his identity and to try to obtain information confirming or dispelling the

7   officer's suspicions."  United States v. Washington, 387 F.3d 1060, 1067 (9th Cir. 2004) (quoting

8   Berkemer v. McCarty, 468 U.S. 420, 439-40 (1984)).  A detention premised on reasonable

9   suspicion must also be "sufficiently brief and minimally intrusive" to be constitutional under the

10  Fourth Amendment.  Id.; see United States v. Sharpe, 470 U.S. 675, 685, (1985).

11         Here, Dep. Rodriguez's initial decision to detain Plaintiff in order to determine whether he

12  was lawfully on the property was supported by reasonable suspicion and was therefore

13  constitutional.  The record reflects that Dep. Rodriguez was responding to a 911 call concerning a

14  suspicious individual and that upon arriving at the scene, a neighbor confirmed the report of the

15  suspicious individual and directed Dep. Rodriguez to Plaintiff's property.  Pl. Fact 8; Rodriguez

16  Depo. at 68:18-69:7; 70:14-71:6.  The record further indicates that in the course of his

17  investigation, Dep. Rodriguez observed an unknown person inside the house and then encountered

18  Plaintiff, who generally matched the description of the individual from the 911 call, coming out of

19  the house towards him.  Rodriguez Depo. at 74:11-20; Aquino Depo. at 69:12.  Finally, when Dep.

20  Rodriguez asked Plaintiff for identification, Plaintiff asked if he was being detained, and Dep.

21  Rodriguez responded that he was being detained until he could determine if Plaintiff lived on the

22  property.  Rodriguez Depo. 83:25-84:15; Pl. Fact 7.

23         As an officer acting in the scope of his professional duties in responding to a report of a

24  suspicious person, it was both reasonable and prudent of Dep. Rodriguez to inquire as to

25  Plaintiff's identity.  Under these circumstances, Dep. Rodriguez had a reasonable, articulable

26  suspicion that a burglary may have occurred and that Plaintiff might be involved.  Accordingly,

United States District Court
Northern District of California

8

Dep. Rodriquez's initial investigative detention for the purposes of confirming or dispelling this suspicion was warranted here.  See Washington, 387 F.3d at 1067.  Based on the foregoing, the court finds as a matter of law that Dep. Rodriquez did not violate Plaintiff's Fourth Amendment rights when executing this initial investigatory detention.  Thus, to the extent that the parties' respective motions are based on the initial investigatory detention, Defendants' motion for summary judgment is GRANTED and Plaintiff's motion for partial summary judgement is DENIED.

### b.  Extended Physical Seizure

Beyond the initial investigatory detention, the parties further disagree as to whether the physical seizure and continued detention of Plaintiff - including the use of force, the use of handcuffs, and placing Plaintiff inside the patrol car - remained a valid investigatory detention under Terry, or whether it extended past what could be considered "sufficiently brief and minimally intrusive" under the Fourth Amendment, instead becoming a *de facto* arrest.  See Washington, 387 F.3d at 1069; Sharpe, 470 U.S. at 685.

Where an officer engaged in a Terry-like stop exceeds the permissible scope of a brief investigatory detention, the stop is transformed into an arrest requiring probable cause.  There is "no bright line rule for determining when an investigatory stop crosses the line and becomes an arrest."  United States v. Parr, 843 F.2d 1228, 1231 (9th Cir.1988).  Whether a specific detention amounts to an arrest or an investigatory stop "is a fact-specific inquiry guided by the general Fourth Amendment requirement of reasonableness" and ascertained in light of the "totality of the circumstances."  Gallegos, 308 F.3d at 991 (internal citations omitted); Green v. City & Cty. of San Francisco, 751 F.3d 1039, 1047 (9th Cir. 2014); Washington v. Lambert, 98 F.3d 1181, 1185 (9th Cir. 1996).  When making this determination, courts consider the "intrusiveness of the methods used in light of whether these methods were reasonable given the specific circumstances."  Green, 751 F.3d at 1047.  Generally, the use of "especially intrusive means" is permitted only under special circumstances, such as "(1) where the suspect is uncooperative or

9

United States District Court
Northern District of California

1    takes action at the scene that raises a reasonable possibility of danger or flight; (2) where the

2    police have information that the suspect is currently armed; (3) where the stop closely follows a

3    violent crime; and (4) where the police have information that a crime [potentially involving]

4    violence is about to occur." Green, 751 F.3d at 1047 (quoting Washington, 98 F.3d at 1189).

5    "[W]hen the police have only reasonable suspicion to make an investigatory stop, drawing

6    weapons and using handcuffs and other restraints will violate the Fourth Amendment."

7    Washington, 98 F.3d at 1187.

8         Here, the record suggests that the "methods" used by Dep. Rodriguez to detain Plaintiff

9    became significantly more intrusive after the initial verbal detention.  Specifically, triggered by

10   Plaintiff's failure to directly hand over his identification, Dep. Rodriguez decided to detain

11   Plaintiff in handcuffs and began attempting to physically restrain him.  See Rodriguez Depo. at

12   92:23-93:15.  Perceiving some resistance, Dep. Rodriguez wrapped his arm around Plaintiff's

13   head and neck, dragged him to the ground, and used his body weight to pin Plaintiff on the ground

14   while commanding him to put his hands out at his side.  See Rodriguez Depo. at 130:24-132:11;

15   Aquino Decl. ¶¶ 19-20.  Plaintiff was eventually handcuffed and put inside the patrol car.

16   Rodriguez Depo. at 133:6-24.; Pl. Facts 65-67.

17        While Dep. Rodriguez did not draw his weapon, the Ninth Circuit has consistently

18   reiterated that "handcuffing substantially aggravates the intrusiveness of an otherwise routine

19   investigatory detention and is not part of a typical Terry stop."  Green, 751 F.3d at 1047; see also,

20   United States v. Del Vizo, 918 F.2d 821, 825 (9th Cir. 1990) (finding the use of handcuffs to be an

21   important factor in determining that an arrest had taken place).  Indeed, even minor restraints on

22   an individual's liberty may be considered a de facto arrest if "the inherent danger of the situation

23   does not justify the intrusive police action.  Washington, 98 F.3d at 1187; see, e.g., United States

24   v. Ricardo D., 912 F.2d 337, 340–42 (9th Cir. 1990) (finding that arrest occurred where police

25   held suspect in patrol car for twenty minutes without drawing weapons or handcuffing him).

26   Here, not only was Plaintiff put in handcuffs, he was subjected to significant physical force in the

27

28
     Case No.: 5:14-cv-03387-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

process, including being taken to the ground, and then restrained for some time in the back of the patrol car.  The question is therefore whether such objectively intrusive measures were warranted by unique circumstances or the "inherent danger" of the situation.

Reviewing the circumstances in light of the <u>Washington</u> factors, the court concludes that a reasonable jury could find that the prolonged detention of Plaintiff, including the use of force and handcuffs, exceeded the limits of an investigative detention under <u>Terry</u>.  There no evidence that Plaintiff was armed or otherwise posed an immediate threat, the detention did not closely follow a violent crime, and the police did not have any specific information that a crime was about to occur.  See <u>Washington</u>, 98 F.3d at 1189.  By Dep. Rodriguez's own testimony, he did not believe Plaintiff was reaching for a weapon or displaying physical aggression toward him.  Rodriguez Depo. at 109:11-111:15; 114:22-115:9.  Moreover, unlike in the cases cited by Defendants where a 911 caller reported a recent or ongoing crime, an immediate threat, or the existence of weapons, the 911 caller here did not provide any facts to suggest a specific crime was being committed, made no mention of weapons, and even stated he was "not sure if [the person] is visiting."  See Def. Mot at 6-7 (citing <u>United States v. Terry-Crespo</u>, 356 F.3d 1170, 1174 (9th Cir. 2004) (finding reasonable suspicion to detain a suspect where the 911 caller reported that he had just been threatened by a man with a .45 handgun, provided a physical description of the man, and gave the location of the incident)).

There is some evidence to suggest that Plaintiff may have been somewhat "uncooperative" or resistant to Dep. Rodriguez, causing Dep. Rodriguez to feel that he was in some danger.  See Rodriguez Depo. at 90:13-92:21; 132:12-19; 155:9-14.  It is also worth noting that Dep. Rodriguez was, at that time, alone, increasing the potential risk to himself.  However, there is also evidence that Plaintiff was generally attempting to comply with Dep. Rodriguez's requests and, while he did not directly hand his ID to Dep. Rodriguez, he did take it out and display it.  See id.; Aquino Decl. ¶¶ 14-15.  Nothing in the record suggests Plaintiff was clearly noncompliant or attempting to flee.  At a minimum, there exists a triable issue as to whether Dep. Rodriguez's tactics exceeded

Case No.: 5:14-cv-03387-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

1   what was necessary or reasonable under the circumstances in violation of Plaintiff's constitutional

2   rights.  Accordingly, Defendants' motion for summary judgment on this issue is DENIED.

3   Because this reasoning precludes judgment as a matter of law in favor of either party, Plaintiff's

4   motion for partial summary judgment is also DENIED.

ii.   **Excessive Force**

6   Plaintiff also asserts that Dep. Rodriguez violated his Fourth Amendment rights by using

7   excessive force when attempting to physically detain him.  A claim of excessive force brought

8   against police officers must be analyzed under the Fourth Amendment's "reasonableness"

9   standard.  Graham v. Connor, 490 U.S. 386, 395 (1989); Smith v. City of Hemet, 394 F.3d 689,

10   700–01 (9th Cir. 2005).  The "objective reasonableness" of an officer's use of force in a particular

11   case is determined "in light of the facts and circumstances confronting [him], without regard to

12   [his] underlying intent or motivation."  Graham, 490 U.S. at 396-97.  "Because this inquiry is

13   inherently fact specific, the determination whether the force used to effect an arrest was reasonable

14   under the Fourth Amendment should only be taken from the jury in rare cases."  Green, 751 F.3d

15   at 1049 (internal quotations omitted); see also Avina v. United States, 681 F.3d 1127, 1130 (9th

16   Cir. 2012) ("summary judgment or judgment as a matter of law in excessive force cases should be

17   granted sparingly."); Chew v. Gates, 27 F.3d 1432, 1443 (9th Cir. 1994) ("[W]hether a particular

18   use of force was reasonable is rarely determinable as a matter of law.").

19   Determining the reasonableness of the force used to effect a seizure requires balancing "the

20   nature and quality of the alleged intrusion" on a person's liberty against the "countervailing

21   governmental interests at stake."  Graham, 490 U.S. at 396.  Similar to the detention analysis,

22   there is no precise definition of what constitutes sufficient government interest to justify the

23   amount of force used.  Rather, the assessment requires careful consideration of the particular facts

24   and circumstances at issue, including (1) the severity of the crime, (2) whether the suspect posed

25   an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively

26   resisting arrest or attempting to evade arrest by flight.  Id.; Luchtel v. Hagemann, 623 F.3d 975,

27

28

United States District Court
Northern District of California

980 (9th Cir. 2010).  Of these factors, the most important generally is whether the suspect posed an immediate threat.  <u>Graham</u>, 490 U.S. at 396.  However, courts must "examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case."  <u>Bryan v. MacPherson</u>, 630 F.3d 805, 826 (9th Cir. 2010).

Here, Defendants argue that Dep. Rodriguez's use of force was objectively reasonable under the circumstances.   Specifically, as to the degree of intrusion, Defendants argue that the "the struggle was brief" and that no weapons, chemical agents, or Tasers were employed.  Def. Mot. at 12.  As to the government interests justifying the use of force, Defendants emphasize that Dep. Rodriguez was responding to a 911 call, that he believed a burglary may have occurred, and that Plaintiff's resistance and his failure to put his hands out to his side once on the ground made Dep. Rodriguez fearful that he was reaching for a weapon.  <u>See</u> Rodriguez Depo. at 85:2-11; 132:12-19.  Defendants conclude that these circumstances are sufficient to justify the degree of force used.  However, Defendants' argument that the degree of intrusion was "minimal" because no weapons were used and the altercation was brief is unconvincing.  Plaintiff alleges that Dep. Rodriguez used significant physical force against him, including dragging him to the ground, employing the use of a chokehold, and handcuffing him.  <u>See</u> Aquino Decl. ¶¶ 19-20; <u>see also</u> Rodriguez Depo. at 130:24-132-1.  This degree of force is more than minimal.  The only question, then, is whether the force used was nevertheless justified by the "countervailing government interest" at stake.  <u>See</u> <u>Graham</u>, 490 U.S. at 396.

Applying the <u>Graham</u> factors to this case, and the reasons already discussed, the court finds that there remain triable issues of fact precluding summary judgment as to whether Dep. Rodriguez's use of force was objectively reasonable under the circumstances.  <u>See</u> 490 U.S. at 396.  As to the "severity of the crime" at issue, while burglary may be considered a serious crime, the 911 caller in this case noted only the presence of a potentially suspicious person on the property.  Neither the dispatch call nor the Call-For-Service ("CAD") used the words "burglary in process," which might have elevated the severity or risk.  Rodriguez Depo. at 101: 14-23; CAD,

United States District Court
Northern District of California

1   Ex. A, Avila Decl., Dkt No. 41-3.  Second, there is no evidence that Plaintiff posed an immediate

2   threat to Dep. Rodriguez or others.  Dep. Rodriguez testified that he did not perceive Plaintiff as

3   making any assaultive movement toward him and at no point did he see a weapon.  Rodriguez

4   Depo. at 77:18-23; 109:11-111:15.  And third, while there is some evidence Plaintiff may have

5   resisted Dep. Rodriguez's attempts to handcuff and detain him, there is also evidence that he was

6   cooperative and sought to comply with Dep. Rodriguez's instructions.  See id. at 90:13-92:21;

7   132:12-19; 155:9-14; Aquino Decl. ¶¶ 14-15.

8        Because there remain disputes of material fact relevant to determining whether Dep.

9   Rodriguez's use of force was "objectively reasonable," this issue cannot be decided as a matter of

10   law.  Accordingly, both motions for summary judgment on this issue are DENIED.

11        **iii.    Warrantless Searches**

12        Plaintiff's final claim under the Fourth Amendment alleges that Dep. Rodriguez conducted

13   unconstitutional searches of his yard, wallet, and residence.  Plaintiff moves for partial summary

14   judgment as to the searches of the yard and the wallet.  Pl. Mol. at 18-19.  Defendants' motion

15   does not specifically address these three searches, but instead argues generally that summary

16   judgment is proper because Dep. Rodriguez's actions were based on reasonable suspicion.  See

17   Def. Opp. to Pl. Mot. ("Def. Opp.") at 6-7, 11-13, Dkt. No. 40.

18        The Fourth Amendment protects "[t]he right of the people to be secure in their persons,

19   houses, papers, and effects against unreasonable searches and seizures."  U.S. Const. amend. IV.

20   In general, for a search to be "reasonable" under the Fourth Amendment, it must be conducted

21   pursuant to a warrant based on probable cause.  Agnello v. United States, 269 U.S. 20, 33 (1925).

22   A "search" under the Fourth Amendment "occurs when the government invades an area in which a

23   person has a reasonable expectation of privacy."  Mendez v. Cty. of Los Angeles, 815 F.3d 1178,

24   1187 (9th Cir. 2016.  It is widely established that nowhere is this expectation greater, or the

25   "protective force of the Fourth Amendment more powerful than within the sanctity of the home."

26   United States v. Crapser, 472 F.3d 1141, 1157 (9th Cir. 2007).  These protections also extend to

27

28   Case No.: 5:14-cv-03387-EJD

14

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
JUDGMENT

1 │ the area immediately adjacent to a home, known as the 'curtilage.'" <u>Mendez</u>, 815 F.3d at 1187

2 │ (9th Cir. 2016) (citing <u>United States v. Struckman</u>, 603 F.3d 731, 739 (9th Cir. 2010)).

3 │      *a.  Search of Plaintiff's Yard*

4 │   For the purpose of summary judgment, the issue here is whether Dep. Rodriguez's

5 │ entrance onto Plaintiff's property was a "search" in violation of the Fourth Amendment.  A

6 │ warrantless search of the home or the curtilage surrounding the home is considered

7 │ "presumptively unreasonable."  <u>Sandoval v. Las Vegas Metropolitan Police Dep't</u>, 756 F.3d 1154,

8 │ 1161 (9th Cir. 2014) (quoting <u>Payton v. New York</u>, 445 U.S. 573, 586 (1980)).  However, it is "a

9 │ firmly-rooted notion in Fourth Amendment jurisprudence" that a resident's expectation of privacy

10 │ will generally not be violated when an officer briefly intrudes onto the property for limited

11 │ investigatory purposes.  <u>See e.g.</u>, <u>Crapser</u>, 472 F.3d at 1156 (finding no invasion of privacy where

12 │ an officer entered onto the front porch and knocked on the door in a non-coercive manner to ask

13 │ questions of a resident.); <u>United States v. Hammett</u>, 236 F.2d 1054, 1060 (9th Cir. 2001) (finding

14 │ no invasion of privacy where an officer walked to the rear of a residence to locate and interview

15 │ the occupant); <u>United States v. Ellis</u>, 121 F. Supp. 3d 927, 949 (N.D. Cal. 2015) (holding that an

16 │ officer's entry into a privately owned driveway or parking lot did not constitute a Fourth

17 │ Amendment violation); <u>see also</u>, <u>Maryland v. Buie</u>, 494 U.S. 325, 327 (1990) (affirming that

18 │ officers may conduct protective sweeps of private property when "the searching officer possessed

19 │ a reasonable belief based on specific and articulable facts which, taken together with the rational

20 │ inferences from those facts, reasonably warranted the officer in believing that the area swept

21 │ harbored an individual posing a danger to the officer or others.").

22 │   Here, Dep. Rodriguez approached the property to investigate a report of a possible

23 │ burglary, looked over the north gate into the backyard for signs of forced entry, and then walked to

24 │ the south side of the house to do the same.  Rodriguez Depo. at 71:23-72:8; 74:2-75:13.  To the

25 │ extent that Dep. Rodriguez actually even entered the property before encountering Plaintiff, he did

26 │ so in a limited and minimally intrusive manner in keeping with his investigation of the 911 report.

*United States District Court*
*Northern District of California*

27 │

15

28 │ Case No.: <u>5:14-cv-03387-EJD</u>
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
JUDGMENT

United States District Court
Northern District of California

Id.  This conduct is consistent with what any reasonable officer would be expected to do in response to such a report.  As such, the court finds that Dep. Rodriguez did not violate any constitutional right when he briefly looked and/or entered onto Plaintiff's property.  To hold otherwise would functionally prevent officers from making welfare checks or preliminary investigations in response to 911 calls without a warrant.

Moreover, even if the court determined that Dep. Rodriguez had violated Plaintiff's Fourth Amendment rights, the law on the subject is not so clearly established that an officer in Dep. Rodriguez' position could not have reasonably believed that his entry into the yard was lawful. See Burrell v. McIlroy, 423 F.3d 1121, 1124 (9th Cir. 2005).  Thus, Dep. Rodriguez would also be entitled to qualified immunity on this issue.  See Pearson v. Callahan, 555 U.S. 223, 231 (2009).

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED to the extent it is based on the warrantless search of Plaintiff's yard.  Plaintiff's motion for partial summary judgement is therefore DENIED for the same reasons.

### b.  Search of Plaintiff's Wallet

Plaintiff also moves for summary judgment as to his allegations that Dep. Rodriguez conducted a search of his wallet in violation of the Fourth Amendment.  Pl. Mot. at 18-21. Defendants do not dispute that Dep. Rodriguez opened Plaintiff's wallet and searched it in order to locate his identification.  Rodriguez Depo. at 137:22-138:15; Pl. Fact 71.  Rather, Defendants argue that because Dep. Rodriguez had reasonable suspicion to detain Plaintiff, and the wallet fell onto the ground during the detention, the search of the wallet was constitutional under the plain view doctrine.  Def. Opp. at 10-11.

As an initial matter, the court recognizes that Plaintiff had a reasonable expectation of privacy in the contents of his wallet.  See United States v. Monclavo-Cruz, 662 F.2d 1285, 1290-91 (9th Cir. 1981) (concluding the individual's "expectation of privacy in her purse was one that society recognizes as reasonable"); United States v. Davis, 332 F.3d 1163, 1170 (9th Cir. 2003) (finding the defendant had a reasonable expectation of privacy in his gym bag); see also, People v.

16

1   Williams, 63 Mich. App. 398, 401 (1975) (holding that the "seizing of a person's wallet and

2   examination of its contents constitutes a search in the constitutional sense since this interferes with

3   the person's reasonable expectation of privacy.").  Accordingly, a warrantless search of a wallet is

4   unreasonable under the Fourth Amendment unless it is justified by a recognized exception.

5          The plain view doctrine is a limited exception permitting law enforcement officers to

6   "seize evidence in plain view, provided that they have not violated the Fourth Amendment in

7   arriving at the spot from which the observation of the evidence is made."  Kentucky v. King, 563

8   U.S. 452, 462 (2011) (citing Horton v. California, 496 U.S. 128, 136-140 (1990)).  To fall within

9   the purview of the plain view doctrine, the Ninth Circuit has identified two requirements that must

10  be met: first "the officers must be lawfully searching the area where the evidence is found" and

11  second, "the incriminatory nature of the evidence must be immediately apparent."  United States

12  v. Stafford, 416 F.3d 1068, 1076 (9th Cir. 2005).  The "incriminating character" of an object is

13  "immediately apparent" if the police have probable cause to believe that the item is illegal,

14  unlawful, or associated with criminal activity.  Id.; see also, Minnesota v. Dickerson, 508 U.S.

15  366, 374-75 (1993).  Neither requirement is met here.

16         First, as discussed, it remains an unsettled question as to whether Dep. Rodriguez violated

17  Plaintiff's rights in reaching the point where he seized and searched the wallet.  Second, there is

18  nothing inherently incriminating or illegal about a wallet.  Moreover, the plain view doctrine was

19  developed in the context of seizures, not searches.  Thus, even assuming the plain view

20  requirements were satisfied here, invoking the doctrine for the purposes of seizing the wallet does

21  not necessarily warrant its search.  United States v. Cornejo, 598 F.2d 554, 556 (9th Cir. 1979)

22  ("The lawfulness of the seizure of the purse does not justify the search of its contents; although the

23  purse itself was in plain view, its contents were not.").  As the Third Circuit explained in

24  addressing this same issue, "[t]he plain view doctrine does not authorize an otherwise

25  unauthorized search…Indeed, the plain view doctrine does not authorize *searches;* by definition, it

26  only authorizes *seizures* of items in plain view to which the officer has a right of access."  United

27

28  Case No.: 5:14-cv-03387-EJD
    ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
    JUDGMENT

17

United States District Court
Northern District of California

United States District Court
Northern District of California

1   States v. Rivera-Padilla, 365 F. App'x 343, 346 (3d Cir. 2010) (emphasis in original).

2          Based on the foregoing, the court finds that the plain view doctrine is inapplicable here to

3   warrant Dep. Rodriguez's search of Plaintiff's wallet.  Defendants advance no additional theory or

4   argument in support of the lawfulness of the search.  Finding no valid basis for the search, the

5   court determines that the search of Plaintiff's wallet was unjustified and judgment in favor of

6   Plaintiff is therefore warranted.  Accordingly, Plaintiff's motion for partial summary judgment is

7   GRANTED as to the search of the wallet.  Damages, if any, will be assessed by a jury.  To the

8   extent that Defendants move for summary judgment on this issue, the motion is DENIED.

9                      *c.  Search of Plaintiff's Residence*

10          Finally, it appears that Plaintiff also alleges Dep. Rodriguez entered his residence without a

11   warrant or consent in violation of the Fourth Amendment.  Compl. ¶ 17; see Pl. Opp. at 9-11.

12   Warrantless searches are considered presumptively unreasonable.  See Payton, 445 U.S. at 586.

13   "To make a lawful entry into a home in the absence of a warrant, officers must have either

14   probable cause and exigent circumstances or an emergency sufficient to justify the entry."

15   Sandoval, 756 F.3d at 1161.  The government bears the burden of demonstrating exigency

16   sufficient to overcome the presumption of unreasonableness.  See Welsh v. Wisconsin, 466 U.S.

17   740, 749 (1984); Silva v. City of San Leandro, 744 F. Supp. 2d 1036, 1051 (N.D. Cal. 2010).

18          Neither Plaintiff nor Defendants specifically address the search of the house with clarity in

19   their respective motions or other pleadings.  In fact, there are inconsistencies even within each

20   party's own allegations on this issue.[4]  Generally, Defendants contend that there is no evidence

21   Dep. Rodriguez entered the Aquino residence.  See Def. Mot. at 23; Def. Opp. at 14; Def. Facts

22   17, 18, 28.  However, Plaintiff offers Dep. Ainuu's testimony that Dep. Rodriguez entered the

23

24   ───────────────

[4] For example, Plaintiff's Facts 75 and 76, which are undisputed by Defendants, state that after

25   Dep. Rodriguez spoke with a neighbor, he released Plaintiff so that Plaintiff could go inside his
     house and retrieve some utility bills  as "proof" that he lived on the property, which Plaintiff did.

26   Dkt. No 40-2.  However, Plaintiff disputes Defendants' Facts 17, 18, and 28, which allege
     essentially the same facts, and instead assert here that it was Dep. Rodriguez who initially

27   retrieved the utility bill from Plaintiff's residence.  Dkt. No. 41-1.

                                                    18
28   Case No.: 5:14-cv-03387-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
     JUDGMENT

house and obtained a PG&E bill with Plaintiff's name on it.  Def. Fact 28; Ainuu Report, Ex. D at 9; Ainuu Depo. at 71:15-75:21.  While there is also evidence to suggest Plaintiff retrieved the utility bill, at a minimum, this fact, as well as the issue of whether Dep. Rodriguez entered and/or searched Plaintiff's home, is disputed, thus precluding summary judgment.  Accordingly, Defendants' motion for summary judgment and Plaintiff's motion for partial summary judgment are DENIED.

### iv.    Qualified Immunity

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson, 555 U.S. at 231 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Maxwell v. Cnty. of San Diego, 708 F.3d 1075, 1082 (9th Cir. 2013).  The qualified immunity analysis is a two-step inquiry. "[A]n officer will be denied qualified immunity in a § 1983 action only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood her conduct to be unlawful in that situation." Green, 751 F.3d at 1051-52; see also Hopkins v. Bonvicino, 573 F.3d 752, 762 (9th Cir. 2009).

At the summary judgment stage, "determinations that turn on questions of law, such as whether an officer had probable cause or reasonable suspicion to support their actions, are appropriately decided by the court." Hopkins, 573 F.3d at 762-63.  "However, a trial court should not grant summary judgment when there is a genuine dispute as to the facts and circumstances within an officer's knowledge or what the officer and claimant did or failed to do." Id. (internal quotations omitted).

In the preceding analysis, the court determined that the question of whether Dep. Rodriguez violated Plaintiff's constitutional rights remains an open question for the jury with respect to (1) the extended physical seizure of Plaintiff; (2) the use of force; and (3) the search of

19

United States District Court
Northern District of California

1    Plaintiff's house, if any.  The court also found that Dep. Rodriguez did violate Plaintiff's

2    constitutional right with respect to the search of the wallet.  However, Dep. Rodriguez may

3    nevertheless be entitled to qualified immunity if the court determines that a reasonable officer in

4    his situation would have believed his conduct in these circumstances was in line with established

5    law at the time.  The court must therefore also engage the second step of the qualified immunity

6    analysis: whether the right at issue was "clearly established" at the time of the incident.  Green,

7    751 F.3d at 1051-52

8         In order to decide whether a constitutional right is clearly established, the court must make

9    two separate determinations: first, "whether the law governing the conduct at issue was clearly

10   established," and second, "whether the facts as alleged could support a reasonable belief that the

11   conduct in question conformed to the established law."  Id. at 1052; see also Maxwell, 708 F.3d at

12   1082 (holding that for a right to be considered clearly established, "its contours must be

13   sufficiently clear that a reasonable official would understand that what he is doing violates that

14   right.").   Both inquiries are questions of law that must be answered by the court.

15        In the instant case, the first requirement is satisfied as a matter of law.  At the time of the

16   incident, it was clearly established that individuals may not be subjected to searches, seizure or the

17   use force without reasonable suspicion or exigent circumstances.  See Green, 751 F.3d at 1052;

18   Mendez, 815 F.3d at 1187; U.S. Const. amend. IV.  The law is also clear that a police officer's use

19   of force on a suspect who does not pose an immediate threat to the officer or others is excessive.

20   Bryan, 630 F.3d at 826; See e.g., Chew, 27 F.3d at 1443 ("severe force" used to arrest a suspect

21   who did not pose an immediate threat to the safety of officers precluded summary judgment for

22   the officer, even though the suspect attempted to flee and was the subject of three outstanding

23   felony warrants).  Thus, the remaining inquiry here is whether, under the facts alleged, Dep.

24   Rodriguez could have reasonably believed that he had sufficient grounds to detain Plaintiff at the

25   time, and that the force used was lawful under the circumstances.  See Green, 751 F.3d at 1052

26   (citing Torres v. City of Madera, 648 F.3d 1119, 1127 (9th Cir. 2011)).

27

28

United States District Court
Northern District of California

1   As to the seizure and use of force, Defendants argue that Dep. Rodriguez had reasonable

2   suspicion to physically detain Plaintiff because Plaintiff became "confrontational," refused to hand

3   over his identification, and was behaving erratically.  Defs.' Reply in Supp. of Def. Mot. ("Def.

4   Reply") at 3-4, Dkt. No. 42.  Defendants contend that, combined with the information already

5   known to Dep. Rodriguez at the time, "officer safety" warranted the use of handcuffs and the

6   exercise of reasonable force.  Id. at 4.

7   However, there are disputed material facts here as to whether Plaintiff was, in fact, being

8   confrontational or erratic in his interaction with Dep. Rodriguez such that Dep. Rodriguez might

9   reasonably believe his actions were lawful.  As discussed above, the record contains some

10  evidence to support Defendants' claims that Plaintiff was being uncooperative, but it also contains

11  evidence that Plaintiff was making efforts to comply with Dep. Rodriguez.  See Rodriguez Depo.

12  at 90:13-92:21; 109:11-111:15; 132:12-19; 155:9-14; Aquino Decl. ¶¶ 14-15.  There is also

13  conflicting evidence regarding how much force was actually used against Plaintiff.  Resolving all

14  factual disputes in Plaintiff's favor, it is not clear from the record that an officer under these

15  circumstances would believe that the seizure and use of force against Plaintiff - including the use

16  of a chokehold and handcuffing him - was lawful.  See Sanders v. City of Fresno, 551 F. Supp. 2d

17  1149, 1166 (E.D. Cal. 2008), aff'd, 340 Fed. Appx. 377 (9th Cir. 2009) ("[W]hen the

18  circumstances show that a reasonable officer" would not perceive the need for force, "any force

19  used is constitutionally unreasonable.").

20  Because the question of whether Dep. Rodriguez acted reasonably depends on factual

21  circumstances that are disputed in the record, this question cannot presently be determined by the

22  court, but must instead be resolved by a jury.  See Johnson v. Bay Area Rapid Transit Dist., 724

23  F.3d 1159, 1180 (9th Cir. 2013); Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993)

24  (explaining that factual findings regarding the circumstances within an officer's knowledge and

25  the conduct of the parties involved must be made by a finder of fact); Deorle v. Rutherford, 272

26  F.3d 1272, 1281 (9th Cir. 2001) (clarifying that "[a] simple statement by an officer that he fears

27

28  Case No.: 5:14-cv-03387-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
JUDGMENT

1    for his safety or the safety others is not enough; there must be objective factors to justify such a

2    concern."). Accordingly, with respect to the seizure and the use of force, the court cannot make a

3    determination regarding qualified immunity at this stage. Defendants' motion for summary

4    judgment based on qualified immunity is therefore DENIED.

5          As to the alleged search of Plaintiff's house and wallet, Defendants' analysis lacks any

6    mention of, or argument as to whether and on what grounds Dep. Rodriguez would be entitled to

7    qualified immunity for these searches. Consequently, finding no basis upon which to assess or

8    grant qualified immunity as to the search of the house of wallet, to the extent that Defendants

9    move for summary judgment on these grounds, the motion is also DENIED.

10       **B.    Municipal Liability Under <u>Monell</u> (Claim Two)**

11         Plaintiff's second cause of action also alleges liability under § 1983 against Sgt. Murray

12    and Monterey County. Both parties move for summary judgment this claim. Municipalities

13    cannot be held vicariously liable for the actions of their employees. <u>Monell v. Dep't of Soc.</u>

14    <u>Servs. of City of New York</u>, 436 U.S. 658, 691 (1978). For a city to be liable under § 1983, a

15    plaintiff must prove that a municipal "policy or custom" caused his constitutional injury. <u>Id.</u> at

16    694. It is insufficient for a plaintiff simply to identify an act "attributable to the municipality;"

17    rather, the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was

18    the 'moving force' behind the injury alleged." <u>Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v.</u>

19    <u>Brown</u>, 520 U.S. 397, 404 (1997) (quoting <u>Monell</u>, 436 U.S. at 694). The challenged policy may

20    be one of "action or inaction." <u>Waggy v. Spokane Cty. Washington</u>, 594 F.3d 707, 713 (9th Cir.

21    2010). "Under an inaction policy claim, a plaintiff can allege that through its omissions the

22    municipality is responsible for a constitutional violation committed by one of its employees." <u>Id.</u>

23         There are three ways a plaintiff may prove the existence of a policy of custom sufficient to

24    prevail on a <u>Monell</u> claim against a municipality:

25              (1) the plaintiff may prove that a public entity employee committed
26              the alleged constitutional violation pursuant to a formal policy or a
                longstanding practice or custom, which constitutes the standard
27              operating procedure of the local government entity; (2) the plaintiff

28   Case No.: 5:14-cv-03387-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

may establish that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official government policy; or (3) the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action.

Avalos v. Baca, 596 F.3d 583, 587-88 (9th Cir. 2010); see also Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005); Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992).  To prove a policy or custom through ratification, a plaintiff must "show that the authorized policymakers…have knowledge of the constitutional violation and actually approve of it."  Lytle v. Carl, 382 F.3d 978, 987 (9th Cir. 2004) (internal quotations omitted).

Here, Plaintiff fails to satisfy his burden to produce evidence creating a genuine issue of material fact on the Monell claim.  Rather, Plaintiff simply states that the alleged "deprivations imposed on [him] were the result of Monterey County's own customs, practices, standards, protocols, and procedures."  Pl. Mot. at 22.  Despite asserting multiple times that "[t]he evidence on this issue is clear, unequivocal and cannot be disputed," Plaintiff offers no factual support for this claim, points to no express county policy or custom, and provides no evidence showing even an inference that such a policy exists.  See id.; Pl. Opp. at 22.; see also Waggy, 594 F.3d at 713 (affirming summary judgment for county where plaintiff failed to provide any evidence of a specific municipal policy, practice or custom).

The only specific facts Plaintiff relies on in support of this claim are that Sgt. Murray counseled Dep. Rodriguez about later charging Plaintiff with a violation of Penal Code 148(a)(1), and that Sgt. Murray, Cmdr. Thornburg, and Monterey County "affirmed" Dep. Rodriguez's conduct at issue here.  See id.; Depo. of Sheriff's Sgt. David Murray at 35:21-25; Avila Decl., Ex. F, Dkt. No. 37.  First, Plaintiff does not establish that Sgt. Murray was an official with policymaking authority.  See Gillette, 979 F.2d at 1346 ("Whether a particular official has final policy-making authority is a question of state law.").  Second, even if he had made this showing, Plaintiff further fails to demonstrate how Sgt. Murray or Cmdr. Thornburg's general support for Dep. Rodriguez regarding the events that transpired in this case amounts to knowledge and

23

1   approval of a constitutional violation.  See Lytle, 382 F.3d at 987.  Finally, the court has not found

2   that Plaintiff suffered a constitutional violation with respect to the use of force, but rather denied

3   summary judgment on the grounds that there remain disputes of material fact relevant to making

4   that determination that must be resolved by a jury.  Consequently, even if Plaintiff had satisfied

5   his burden on this claim, he would still not be entitled to summary judgment because he would be

6   unable to show approval of a constitutional violation.  Scott v. Henrich, 39 F.3d 912, 916 (9th Cir.

7   1994) ("While the liability of municipalities doesn't turn on the liability of individual officers, it is

8   contingent on a violation of constitutional rights.").

9        Accordingly, in the absence of any evidence upon which a jury could find liability under

10   Monell, Defendants' motion for summary judgment on Plaintiff's second cause of action is

11   GRANTED.  Plaintiff's motion for summary judgment is therefore DENIED.

12   **C.    Claims Alleging Racial Animus (Claims Three and Six)**

13        The third and sixth causes of action allege that Dep. Rodriguez violated Plaintiff's

14   constitutional and California statutory right to be free from racially discriminatory actions under

15   42 U.S.C. § 1981 and California Civil Code § 51.7.  Defendants move for summary judgment on

16   the basis that Plaintiff failed to offer any evidence that the complained of acts were motivated by

17   racial animus.  Def. Mot at 16-19.  Because the court finds that the record lacks sufficient evidence

18   upon which a jury could find Dep. Rodriguez's actions were motivated by racial animus or

19   intentional discrimination, Defendants are entitled to summary judgment.

20        Section 1981 guarantees that no person shall be denied equal rights under the law on

21   account of race.  See Evans v. McKay, 869 F.2d 1341, 1344 (9th Cir. 1989).  Because claims

22   brought under § 1981 are grounded in the Equal Protection Clause of the Fourteenth Amendment,

23   an "essential element" of a valid § 1981 action is that the defendant "acted with the *intent* to

24   discriminate on the basis of race." McKenzie v. City of Milpitas, 738 F. Supp. 1293, 1301 (N.D.

25   Cal. 1990), aff'd, 953 F.2d 1387 (9th Cir. 1992) (emphasis in original); Gen. Bldg. Contractors

26   Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982) ("[Section] 1981, like the Equal Protection

27

28   Case No.: 5:14-cv-03387-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
     JUDGMENT

*United States District Court*
*Northern District of California*

24

Clause, can be violated only by purposeful discrimination.").  To establish a claim under section

1981, the plaintiff must show overt acts by the defendant, "coupled with some direct evidence that

the defendant's conduct was motivated by racial animus."  Evans, 869 F.2d at 1345. Where there

is direct evidence of discriminatory motive, such as statements that overtly implicate racial

prejudice, summary judgment on the question of racial bias generally is inappropriate.  Metoyer v.

Chassman, 504 F.3d 919, 937 (9th Cir. 2007) (citing Cordova v. State Farm Ins. Cos., 124 F.3d

1145, 1149 (9th Cir.1997)).  On the other hand, where there is only circumstantial evidence of

racial bias, that evidence must be "specific and substantial" in order to create a triable issue with

respect to whether defendant intended to discriminate.  See Godwin v. Hunt Wesson, Inc., 150

F.3d 1217, 1222 (9th Cir. 1998), as amended (Aug. 11, 1998).  A plaintiff's subjective belief that a

defendant's conduct is motivated by discriminatory intent is not sufficient to defeat summary

judgment.  See Gomez v. City of Fremont, 730 F.Supp.2d 1056, 1069 (N.D. Cal. 2010).

Similarly, California Civil Code § 51.7, or the Ralph Act, prohibits the use of force against

any individual on account of their race, color, ancestry, or national origin.  Cal. Civ. Code

§ 51.7(a) ("All persons within [California] have the right to be free from any violence, or

intimidation by threat of violence, committed against their persons or property" because of race).

In order to establish a § 51.7 claim, a plaintiff must show "(1) the defendant threatened or

committed violent acts against the plaintiff; (2) the defendant was motivated by his perception of

plaintiff's race; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial

factor in causing the plaintiff's harm."  Austin B. v. Escondido Union Sch. Dist., 149 Cal. App.

4th 860, 880–81 (2007); see also Gomez, 730 F. Supp. 2d at 1069.

Summary judgment in § 1981 cases is governed by the burden shifting framework

established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Patterson v. McLean

Credit Union, 491 U.S. 164, 186-88 (1989).  Under the McDonnell Douglas test, the plaintiff bears

the initial burden of establishing a prima facie case of racial discrimination.  Patterson, 491 U.S. at

186.  If the plaintiff succeeds in making a prima facie case, the burden shifts to the defendant "to

Case No.: 5:14-cv-03387-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
JUDGMENT

United States District Court
Northern District of California

1   articulate some legitimate, nondiscriminatory reason" for the allegedly discriminatory conduct.

2   McDonnell Douglas, 411 U.S. at 802.  If the defendant meets this burden, the responsibility shifts

3   back to the plaintiff to prove that the reasons offered by the defendant were actually pretext for

4   discrimination.  Id. at 804-05.  Notwithstanding the shifting burden, the plaintiff retains the

5   ultimate burden of proving that he was the victim of intentional discrimination.  See St. Mary's

6   Honor Ctr. v. Hicks, 509 U.S. 502, 508 (1993).

7         Here, Plaintiff provided no evidence that Dep. Rodriguez's conduct was motivated by

8   racial bias.  Instead, Plaintiff asserts a subjective belief that Dep. Rodriguez "accepted, without

9   question, the comments of an unknown white male" regarding a "suspicious" Hispanic male,

10   while refusing to take Plaintiff, a Hispanic male, at his word that he resided on the property.  Pl.

11   Opp. at 23.  The speculative suggestion that "criminal behavior was erroneously presumed by

12   Rodriguez on the sole basis that [Plaintiff] was Hispanic and wearing a hoodie" fails to establish

13   discriminatory motive under § 1981 and is unsupported by the evidence.  See id.  The factual

14   reference to Plaintiff's ethnicity in the regular course of an investigation - for example, to

15   physically describe a suspect - together with Dep. Rodriguez's decision not to simply accept

16   Plaintiff's statement as true without any further support, is insufficient to show racial animus.

17         Because a § 51.7 cause of action also requires a showing that the defendant was motivated

18   by racial animus when he used force against the plaintiff, this claim fails for the same reason.  See

19   Austin B., 149 Cal. App. 4th at 880-81.  In fact, outside of allegations contained in the Complaint,

20   Plaintiff makes no further reference to, or argument on behalf of, his § 51.7 claim.

21         Based on the foregoing, Defendant's motion for summary judgment is GRANTED as to

22   Plaintiff's third and sixth cause of action.  See Gomez, 730 F. Supp. 2d at 1069 (granting summary

23   judgment in favor of defendant on § 1981 and § 51.7 claims where the plaintiff offered "only a

24   subjective belief, and not any evidence, that [the defendants] were motived by his ethnicity" when

25   they forcefully seized him while executing an arrest warrant).

26

27                                              26

28   ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

### D.    State Law Claims

Plaintiff's remaining causes of action allege claims under California state law against both the individual Defendants and Monterey County.  As an initial matter, while municipal liability is precluded under § 1983 unless it adopted an unconstitutional policy or custom, California has rejected the <u>Monell</u> rule and "imposes liability on counties under the doctrine of respondeat superior for acts of county employees."  <u>Robinson v. Solano Cty.</u>, 278 F.3d 1007, 1016 (9th Cir. 2002); Cal. Gov't. Code § 815.2(a); <u>Knapps v. City of Oakland</u>, 647 F.Supp.2d 1129, 1165 (N.D. Cal. 2009) (citing <u>Munoz v. City of Union City</u>, 120 Cal. App. 4th 1077, 1110 (2004)).  Under California law, a municipality is granted immunity from the acts of its employees "only where the public employee would also be immune."  <u>Robinson</u>, 278 F.3d at 1016.  California denies immunity to officers who use excessive force in arresting a suspect.  <u>Mary M. v. City of Los Angeles</u>, 54 Cal. 3d 202, 215 (1991) ("Since the enactment of the California Tort Claims Act in 1963, a governmental entity can be held vicariously liable when a police officer acting in the course and scope of employment uses excessive force or engages in assaultive conduct.").  Thus, for each of the claims listed below, whenever the motion for summary judgment against the officers is granted, the motion as to the City will be granted as well.

### i.    Assault and Battery (Claim Four)

Plaintiff's forth cause of action for assault and battery under California law is governed by the same analysis as his §1983 claim for excessive force.  <u>See</u> <u>Nelson v. City of Davis</u>, 709 F. Supp. 2d 978, 992 (E.D. Cal. 2010) ("Because the same standards apply to both state law assault and battery and Section 1983 claims premised on constitutionally prohibited excessive force, the fact that Plaintiff's § 1983 claims under the Fourth Amendment survive summary judgment also mandates that the assault and battery claims similarly survive.").

Here, due to unresolved questions of fact, the court concluded that judgment as a matter of law was improper on the issue of excessive force.  Because neither Plaintiff nor Defendants are entitled to summary judgment on the excessive force claim, they are not entitled to summary

Case No.: 5:14-cv-03387-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
JUDGMENT

1   judgment on the assault and battery claim.  See Blankenhorn v. City of Orange, 485 F.3d 463, 487

2   (9th Cir. 2007) (reversing summary judgment for assault and battery claim when summary

3   judgment was inappropriate on excessive force claim); Saman v. Robbins, 173 F.3d 1150, 1157 n.

4   6 (9th Cir. 1999) (police officer commits battery only when excessive force is used) (citing Cal.

5   Penal Code § 835(a)).  Accordingly, both Defendants' motion for summary judgment and

6   Plaintiff's motion for partial summary judgment are DENIED.

7         **ii.**    **Intentional/Negligent Infliction of Emotional Distress (Claims Five and Nine)**

8         Plaintiff's fifth and ninth causes of action allege intentional and negligent infliction of

9   emotional distress against Dep. Rodriguez.  With respect to the IIED claim, Plaintiff must prove:

10   (1) "extreme and outrageous conduct by the defendant with the intention of causing, or reckless

11   disregard of the probability of causing, emotional distress;" (2) that the plaintiff actually suffered

12   severe emotional distress; and (3) that the defendant's outrageous conduct was the "actual and

13   proximate" cause of the plaintiff's emotional distress.  Catsouras v. Dep't of Cal. Highway

14   Patrol, 181 Cal. App. 4th 856, 874-75 (2010).

15         A claim for NIED, on the other hand, is "not an independent tort, but rather is derived from

16   the tort of negligence."  Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc., 48 Cal.3d 583, 588

17   (1989).  Thus, a claim for NIED requires the plaintiff to establish the traditional elements of duty,

18   breach of duty, causation, and damages, as well as show that he or she has suffered "serious"

19   emotional distress.  Wong v. Tai Jing, 189 Cal. App. 4th 1354 (2010).

20         Here, Defendants move for summary judgment on the grounds that Dep. Rodriguez's use

21   of force was reasonable under the circumstances and certainly did not go "beyond all possible

22   bounds of decency."  Def. Mot. at 18 (quoting Rest. 2d Torts, § 46); see also Ross v. Creel

23   Printing & Publ'g Co., 100 Cal. App. 4th 736, 744  (2002).  While a law enforcement officer's

24   unreasonable use of force could be considered extreme and outrageous, here, Plaintiff has failed to

25   satisfy the other elements of a claim for IIED or NIED.  Specifically, Plaintiff's pleadings are

26   devoid of any evidence establishing that Plaintiff suffered emotional distress of any kind, much

27   

28   Case No.: 5:14-cv-03387-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
JUDGMENT

28

1  less "serious" or "severe" distress.  In fact, other than its inclusion in the section heading, Plaintiff

2  did not present any arguments or evidence in support of these causes of action at all.  See Pl. Opp.

3  at 24-25.  Defendants' motion for summary judgment on the fifth and ninth causes of action is

4  therefore GRANTED.

5              iii.    The Bane Act (Claim Seven)

6          Plaintiff's seventh cause of action alleges that Defendants are liable under California Civil

7  Code § 52.1, or the Bane Act, for violations of his federal constitutional and statutory rights.

8          The Bane Act provides a claim for relief "against anyone who interferes, or tries to do so,

9  by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured

10 by federal or state law."  Jones v. Kmart Corp., 17 Cal. 4th 329, 331 (1998).  "The essence of a

11 Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation

12 or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to

13 do under the law or [forced] the plaintiff to do something that he or she was not required to do

14 under the law.  Austin B., 149 Cal. App. 4th at 883.  When a § 52.1 claim is premised on the

15 violation of a constitutional right, the court must look to the elements of the constitutional claim to

16 determine whether the § 52.1 claim is meritorious.  See Cameron v. Craig, 713 F.3d 1012, 1022

17 (9th Cir. 2013) (explaining that because the California right asserted by plaintiff was the same as

18 the rights guaranteed by the Fourth Amendment, resolution of the plaintiff's excessive force claim

19 under § 52.1 was the same as under the § 1983 claim.).

20         Here, Plaintiff's claim is premised on Defendants' alleged unlawful seizure and use of

21 excessive force.  As to the seizure, Defendants' motion for summary judgment relies on California

22 Penal Code § 847, which states in relevant part that a law enforcement officer shall not be held

23 civilly liable for false arrest when the officer, "acting within the scope of his or her authority"

24 made a lawful arrest or "had reasonable cause to believe the arrest was lawful."  Cal. Pen. Code §

25 847(b); see Blankenhorn, 485 F.3d at 486-87.  Pursuant to the analysis set forth with respect to

26 Plaintiff's Fourth Amendment claims, the court finds that upon his initial encounter with Plaintiff,

27

28 Case No.: 5:14-cv-03387-EJD
   ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
   JUDGMENT

29

1    Dep. Rodriguez had good cause to "seize" Plaintiff for investigatory purposes.  Thus, to the extent

2    that Plaintiff's § 52.1 claim is based on this initial seizure, Defendants' motion is GRANTED.

3            However, there remain disputed facts upon which a jury could find that Dep. Rodriguez

4    did not have reasonable cause to believe the seizure was lawful during the subsequent altercation

5    and detention.  See § 836(a)(1); Blankenhorn, 485 F.3d at 486-87.  A triable issue also remains as

6    to whether Dep. Rodriguez's tactics amounted to excessive force.  See Knapps, 647 F. Supp. 2d at

7    1168 ("The elements of a section 52.1 excessive force claim are essentially identical to those of a

8    § 1983 excessive force claim.").  Accordingly, except as specified above, both Defendants' motion

9    for summary judgment and Plaintiff's motion for partial summary judgment on the seventh cause

10   of action are DENIED.

###     iv.     Negligence (Claim Eight)

12           Plaintiff's eight cause of action for negligence asserts that Dep. Rodriguez failed to

13   exercise due care when executing a seizure of his person, causing him "unnecessary physical

14   harm" and distress.  Compl. ¶ 24.  Both parties move for summary judgment on this claim.

15           "In order to prove facts sufficient to support a finding of negligence, a plaintiff must show

16   that the defendant had a duty to use due care, that he breached that duty, and that the breach was

17   the proximate or legal cause of the resulting injury."  Hayes v. Cnty. of San Diego, 57 Cal. 4th

18   622, 629 (2013) (citations omitted).  Law enforcement officers have a duty to act reasonably when

19   using force, which must be determined in light of the totality of the circumstances.  Id.  Therefore,

20   to prevail on a claim for negligence, a plaintiff must demonstrate that the officers "acted

21   unreasonably and that the unreasonable behavior harmed" the plaintiff.  Price v. Cnty. of San

22   Diego, 990 F. Supp. 1230, 1245 (S.D. Cal. 1998)).

23           Because a jury could find that Dep. Rodriguez acted unreasonably in his use of force, and

24   that this force resulted in physical injury to Plaintiff, summary judgment in favor of either party on

25   the issue of negligence is improper at this time.  Defendants' motion for summary judgment and

26   Plaintiff's motion for partial summary judgment are therefore both DENIED.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### v.     Conversion of Property (Claim Ten)

The tenth cause of action alleges that Dep. Rodriguez removed a $50.00 bill from Plaintiff's wallet in violation of California law.  See Aquino Decl. ¶ 5-6.  Under California law, the tort of conversion is the wrongful exercise of dominion over another's personal property.  See Shopoff & Cavallo LLP v. Hyon, 167 Cal. App. 4th 1489, 1507-08 (2008).  A claim for conversion requires (1) plaintiff's ownership or right to possession of the property at issue; (2) the defendant's conversion of the property by a wrongful act; and (3) damages.  Spates v. Dameron Hosp. Assn., 114 Cal. App. 4th 208, 221 (2003).  Defendants argue they are entitled to summary judgment because Plaintiff fails to provide any factual basis for his belief that Dep. Rodriguez took the money from his wallet.

The court agrees with Defendants.  Plaintiff submits evidence suggesting that on November 4, 2013, he had $250 in cash in his wallet.  Aquino Decl. ¶ 30, Ex. C, Dkt. 41-2; Aquino Depo. at 149:1-23, Dkt 41-3.  But the record contains no evidence that Dep. Rodriguez removed $50.00 from the wallet.  In fact, even though Plaintiff's pleadings continually assert that the wallet "only contained $200 when it was returned to him," this fact is not included in either Plaintiff's written declaration or in his deposition testimony.  See Pl. Opp. at 25; Aquino Decl., Dkt. 41-2; Aquino Depo. at 148:7-150:11.  And even if it were included, that alone is insufficient to show that Dep. Rodriguez - or anyone - took the money through a "wrongful act."  Plaintiff admits that he did not observe Dep. Rodriguez open his wallet at any time.  Aquino Depo. at 148:7-12.  Because Plaintiff has failed to satisfy the second element of a conversion cause of action, and there remains no disputed factual basis upon which a jury could find otherwise, summary judgment is GRANTED in favor of Defendants on the conversion claim.

### vi.     Trespass (Claim Eleven)

Plaintiff's eleventh cause of action alleges that Dep. Rodriguez trespassed on his property under California law when he entered and searched his property without consent.  Plaintiff brings this claim against Dep. Rodriguez and Monterey County.  Defendants again assert that Plaintiff

31

1   lacks evidence the Dep. Rodriguez ever entered his property, and argue that even if he had, Dep.

2   Rodriguez is entitled to immunity under California Government Code Section 820.2.  Def. Mot. at

3   23.  Both parties move for summary judgment on this claim.

4           Under Section 820.2, "a public employee is not liable for an injury resulting from his act or

5   omission where the act or omission was the result of the exercise of the discretion vested in him,

6   whether or not such discretion be abused."  Cal. Gov't Code § 820.2.  For immunity purposes,

7   whether an act may be considered "discretionary" generally turns on whether it required "personal

8   deliberation, decision and judgment," or rather whether it amounted only to "obedience to orders

9   or the performance of a duty in which the officer is left no choice of his own," and is thus more

10  appropriately considered "ministerial."  McCorkle v. City of Los Angeles, 70 Cal. 2d 252, 261

11  (1969); see also Martinez v. City of Los Angeles, 141 F.3d 1373, 1379 (9th Cir. 1998).  California

12  courts also specifically distinguish between a law enforcement officer's discretion in undertaking

13  an investigation and his or her negligence in conducting it.  See McCorkle, 70 Cal.2d at 261.

14  Section 820.2 immunity "provides complete protection for the decision to investigate ... and for

15  actions necessary to make a meaningful investigation," but does not extend to "non-discretionary

16  actions or to at least some intentional torts committed in the course of making the investigation."

17  Wallis v. Spencer, 202 F.3d 1126, 1144 (9th Cir. 2000) (citing Newton v. Cnty. of Napa, 217

18  Cal.App.3d 1551 (1st Dist. 1990).

19          Here, Dep. Rodriguez's entry onto Plaintiff's property was part of his decision to

20  investigate the report of a suspicious person in the house, and was necessary to undertaking that

21  investigation.  Based on his judgment and personal assessment of the circumstances, it was within

22  Dep. Rodriguez's discretion to initiate this investigation by entering the property.  While this does

23  not preclude him from liability for subsequent acts where he may be found to have used excessive

24  force or other improper means during the course of the investigation, section 820.2 does provide

25  immunity for the preliminary decisions involved in initiating the investigation itself.  See Sullivan

26  v. City of San Rafael, No. C 12-1922 MEJ, 2013 WL 3357933, at *14 (N.D. Cal. July 2, 2013)

27

28

United States District Court
Northern District of California

1   (explaining that an officer's "initial, considered decision to enter [an individual's] home may be

2   immunized by section 820.2, but the decisions made during the course of the subsequent operation

3   might not be.") (quoting Obas v. Cnty. of Monterey, No. 09-CV-05540-LHK, 2011 WL 738159,

4   at *12 (N.D. Cal. Feb. 22, 2011) aff'd, 504 F. App'x 558 (9th Cir. 2013)).

5       Because the court finds that Dep. Rodriguez is entitled to immunity under section 820.2,

6   Defendants' motion for summary judgment on Plaintiff's eleventh cause of action for trespass is

7   GRANTED, and Plaintiff's motion for partial summary judgment is DENIED.

8               vii.    Malicious Prosecution (Claim Twelve)

9       Finally, Plaintiff's twelfth cause of action alleges malicious prosecution against Dep.

10   Rodriguez and Monterey County.  Defendants move for summary judgment on the grounds that

11   they are entitled to immunity under California Government Code section 821.6.

12      Section 821.6 provides immunity to public employees for actions taken in preparation for

13   formal proceedings, including actions related to investigations.   Paterson v. City of Los Angeles,

14   174 Cal. App. 4th 1393, 1405 (2009).  The "principal function" of section 821.6 is "to provide

15   relief from malicious prosecution." Blankenhorn, 485 F.3d at 487-88 (citing Kayfetz v.

16   California, 156 Cal.App.3d 491, 497 (1984).  The protection also extends to actions "incidental to

17   the investigation of crimes." See Amylou R. v. Cnty. of Riverside, 28 Cal. App. 4th 1205, 1211

18   (1994).  Under section 821.6, "[a] public employee is not liable for injury caused by his instituting

19   or prosecuting any judicial or administrative proceeding within the scope of his employment, even

20   if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6.  California courts

21   interpret section 821.6 broadly "in furtherance of its purpose to protect public employees in the

22   performance of their prosecutorial duties from the threat of harassment through civil suits." Gillan

23   v. City of San Marino, 147 Cal. App.4th 1033, 1048 (2007).

24      In the instant case, Dep. Rodriguez is entitled to immunity under section 821.6.  To the

25   extent that Plaintiff maintains any allegations pertaining to malicious prosecution, such allegations

26   fall within the purview of section 812.6's protections for acts related to investigations and

27

28   Case No.: 5:14-cv-03387-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

1   prosecutions of crimes.  But even without immunity, Plaintiff provides no evidence and makes no

2   further argument concerning the claim for malicious prosecution against Dep. Rodriguez or

3   Monterey County.  Plaintiff did not respond to or oppose Defendants' motion for summary

4   judgment on this claim, nor was the claim mentioned in Plaintiff's motion for partial summary

5   judgment.  Plaintiff fails to present evidence that he was in fact prosecuted or that Defendants

6   possessed a malicious motive in pursing charges against him.  See Usher v. City of Los Angeles,

7   828 F.2d 556, 562 (9th Cir. 1987) ("In California, the elements of malicious prosecution are (1)

8   the initiation of criminal prosecution, (2) malicious motivation, and (3) lack of probable cause.").

9   Accordingly, Defendants' motion for summary judgment is GRANTED.

10  **IV.    CONCLUSION**

11          Based on the foregoing, Defendants' Motion for Summary Judgment (Dkt. No. 38) and

12  Plaintiff's Motion for Partial Summary Judgment (Dkt. No 37) are GRANTED IN PART and

13  DENIED IN PART as follows:

14          1.      As to the first cause of action asserting violations of the Fourth Amendment under

15  42 U.S.C. § 1983 against Dep. Rodriguez: Defendants' motion is GRANTED to the extent it is

16  based on (1) the initial investigatory detention, and (2) the "search" of Plaintiff's yard, but is

17  DENIED on all other grounds.  Plaintiff's motion as to this claim is GRANTED to the extent it is

18  based on the search of his wallet, and is DENIED in all other respects.

19          2.      As to the second cause of action asserting violations of the Fourth Amendment

20  under 42 U.S.C. § 1983 (Monell) against Sgt. Murray and Monterey County: Defendants' motion

21  is GRANTED; Plaintiff's motion is DENIED.

22          3.      Defendants' motion is GRANTED as to the third case of action for violation of 42

23  U.S.C. § 1981 against Dep. Rodriguez.

24          4.      As to the fourth cause of action asserting assault and battery against Dep.

25  Rodriguez: Defendants' motion is DENIED; Plaintiff's motion is also DENIED.

26          5.      Defendants' motion is GRANTED as to the fifth cause of action for intentional

27

28  Case No.: 5:14-cv-03387-EJD
    ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
    JUDGMENT

                                                    34

United States District Court
Northern District of California

1    infliction of emotional distress against Dep. Rodriguez.

2        6.     Defendants' motion is GRANTED as to the sixth cause of action for violation of

3    California Civil Code § 51.7 against Dep. Rodriguez.

4        7.     As to the seventh cause of action asserting violation of the Bane Act (Cal. Civ.

5    Code § 52.1) against all Defendants: Defendants' motion is GRANTED to the extent it is

6    premised on the initial investigatory seizure, but DENIED in all other respects; Plaintiff's motion

7    is DENIED.

8        8.     As to the eighth cause of action asserting negligence against all Defendants:

9    Defendants' motion is DENIED; Plaintiff's motion is also DENIED.

10        9.     Defendants' motion is GRANTED as to the ninth cause of action for negligent

11    infliction of emotional distress against Dep. Rodriguez.

12        10.     Defendants' motion is GRANTED as to the tenth cause of action for conversion of

13    property against Dep. Rodriguez.

14        11.     As to the eleventh cause of action for trespass against Dep. Rodriguez and

15    Monterey County: Defendants' motion is GRANTED; Plaintiff's motion is DENIED.

16        12.     Defendants' motion is GRANTED as to the twelfth cause of action for malicious

17    prosecution against Dep. Rodriguez and Monterey County.

18

19        **IT IS SO ORDERED.**

20    Dated: September 29, 2016

21

22                               EDWARD J. DAVILA
                              United States District Judge

23

24

25

26

27

28    Case No.: 5:14-cv-03387-EJD
   ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY
   JUDGMENT

United States District Court
Northern District of California