United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NICOLAS AQUINO,<br><br>        Plaintiff,<br><br>   v.<br><br>COUNTY OF MONTEREY SHERIFF'S DEPARTMENT, et al.,<br><br>        Defendants. | Case No. 5:14-cv-03387-EJD<br><br>**SECOND ORDER RE: MOTIONS *IN LIMINE***<br><br>Re: Dkt. Nos. 107, 108, 111, 112, 114, 115, 117, 118, 119, 124, 126, 128, 129, 131, 132, 134, 136, 137, 138, 181 |

Presently before the Court is the balance of the parties' motions *in limine*. Dkt. Nos. 107, 108, 111, 112, 114, 115, 117, 118, 119, 124, 126, 128, 129, 131, 132, 134, 136, 137, 138, 181. Having considered the moving and responding papers along with the argument held at the Final Pretrial Conferences held on July 12, 2018 and July 17, 2018, the Court rules on the remaining motions as set forth below.

### I.   PLAINTIFF'S MOTIONS

Plaintiff's first motion *in limine* to preclude Defendants' police practices expert, Dr. Don Cameron, from testifying by deposition is DENIED. Federal Rule of Civil Procedure 32(a)(4) provides that "[a] party may use for any purpose the deposition of a witness, whether or not a party, if . . . the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition." At the time of trial, Dr. Cameron will be on a prepaid cruise in Alaska, more than 100 miles from the courthouse. *See* Dkt. No. 173-1. His absence was not procured by

Case No.: 5:14-cv-03387-EJD
SECOND ORDER RE: MOTIONS *IN LIMINE*

1

1   Defendants; indeed, Dr. Cameron was available for trial when it was originally scheduled on June
2   28, 2016. *See* Dkt. No. 32; Dkt. No. 173 ¶ 3. Defendants also were not aware of Mr. Cameron's
3   travel plans at the time the Court scheduled the current trial date. *See* Dkt. No. 79; Dkt. No. 173
4   ¶ 3. Further, it does not appear that Plaintiff would be prejudiced by Dr. Cameron's testifying by
5   deposition.[1] Plaintiff was notified before Dr. Cameron's second deposition that Dr. Cameron
6   would not be available for trial. Dkt. No. 173 ¶ 6. As such, he had full opportunity to cross-
7   examine Dr. Cameron on the entirety of his testimony, just as he would have had at trial.
8         Plaintiff's second motion *in limine* to exclude testimony containing legal conclusions from
9   Dr. Cameron is GRANTED IN PART and DENIED IN PART. Defendants offer Dr. Cameron as
10  an expert in police practices. As such, he can testify, for example, regarding the training, practice,
11  and procedures police officers receive and whether certain behaviors are consistent with that
12  training. He cannot, however, testify about legal standards, such as whether Dep. Rodriguez had
13  "reasonable suspicion," "probable cause," or whether certain actions were "objectively
14  reasonable." This invades the province of the jury. In light of this, some of Dr. Cameron's
15  proposed testimony goes too far. *See, e.g.*, Ex. B at 34:23-35:2 (testimony "[t]hat Deputy
16  Rodriguez had reasonable suspicion to contact Mr. Aquino. That he had reasonable suspicion to
17  detain Mr. Aquino"), Dkt. No. 140-1; *see also, e.g.*, Dkt. No. 108-1 at 2 ("Deputy Rodriguez had
18  reasonable suspicion . . ."), 3 (same), 3 ("it was reasonable for Deputy Rodriguez to attempt to
19  place Mr. Aquino in handcuffs . . ."), 4 ("[h]e had probable cause . . ."). Accordingly, Defendants
20  shall modify their designations of Dr. Cameron's deposition testimony to be consistent with this
21  ruling. The parties shall meet and confer regarding Defendants' proposed modifications and,
22  should any disputes remain outstanding, inform the Court no later than **July 27, 2018 at 4:00 p.m.**
23        Plaintiff's third motion *in limine* to exclude testimony containing legal conclusions from
24  Dr. Gregory Lee, Defendants' military procedures expert, is GRANTED. As discussed with

---

[1] The Court also notes that, at the July 12, 2018 pretrial conference, it offered to move the trial such that Dr. Cameron could have testified live. Plaintiff did not prefer this option. This too, then, supports the Court's observations about a lack of prejudice.

Case No.: 5:14-cv-03387-EJD
SECOND ORDER RE: MOTIONS *IN LIMINE*
2

respect to Defendants' eighth motion *in limine*, the evidence which is relevant to Plaintiff's Bane Act claim and theory of lost military career is limited. Multiple military fact witnesses, including Col. Sandlin and Mr. Glazier, will be available to testify at trial, and, as the Court currently sees it, should be sufficient to provide this information. Expert testimony is unnecessary.

Plaintiff's fourth motion *in limine* to exclude testimony from Dr. Cameron which assumes facts that are still in dispute is GRANTED IN PART and DENIED IN PART. As discussed above with reference to Plaintiff's second motion *in limine*, Dr. Cameron can testify about police procedures and practices that officers receive training in, and whether certain actions are consistent with them. It follows from this that discussions about specific actions (especially if disputed) should be phrased in the hypothetical—i.e., Dr. Cameron can testify that if Dep. Rodriguez did X, it would be consistent/inconsistent with police practices; he need not and should not testify about whether Dep. Rodriguez actually did X. Some of Dr. Cameron's testimony runs afoul of this principle. *See, e.g.*, Ex. B at 50:17-24 (testimony that Plaintiff "pulled out identification, he kind of moved it around in front of Deputy Rodriguez, but when Deputy Rodriguez tried to take the identification he pulled it away and wouldn't let him have the identification."); *see also, e.g.*, Dkt. No. 108-1 at 3 (statement in expert report that Plaintiff "kept Deputy Rodriguez from seeing [his identification] or examining it"); *id*. (statement in expert report that Plaintiff "did not retrieve his identification and became verbally confrontational"). Accordingly, as with Plaintiff's second motion *in limine*, the Court directs Defendants to modify their designations of Dr. Cameron's deposition testimony to be consistent with this ruling. The parties shall meet and confer regarding Defendants' proposed modifications and, should any disputes remain outstanding, inform the Court no later than **July 27, 2018 at 4:00 p.m.**

Plaintiff's fifth motion *in limine* to exclude testimony from Dr. Lee which assumes facts that are still in dispute is GRANTED. As discussed above with respect to Plaintiff's third motion *in limine*, Dr. Lee will not be permitted to testify at trial.

Plaintiff's sixth motion *in limine* to exclude testimony from Dr. Levy, Defendants' psychiatric expert, that Plaintiff suffered from psychiatric conditions that would make him more

Case No.: 5:14-cv-03387-EJD
SECOND ORDER RE: MOTIONS *IN LIMINE*
3

likely to be combative is GRANTED IN PART and DENIED IN PART. Federal Rule of Evidence Rule 404(a)(1) provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Accordingly, Dr. Levy cannot testify that Plaintiff has a personality that would make it more likely that he was combative toward Dep. Rodriguez.[2]

Nevertheless, relevant evidence is generally admissible, *see* Fed. R. Evid. 402, and "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action," Fed. R. Evid. 401. Here, Plaintiff claims that, as a result of Dep. Rodriguez's actions, he suffered "severe emotional and mental distress, fear, terror, anxiety, humiliation, embarrassment, and loss of his sense of security, dignity, and pride as a Latin American citizen of the United States." Compl. ¶ 35. Accordingly, expert testimony from Dr. Levy on Plaintiff's mental and emotional state is relevant and admissible. Further, to the extent that Plaintiff opens the door regarding topics for which Dr. Levy would have relevant, reliable, and not otherwise inadmissible testimony, Dr. Levy may provide rebuttal.

Plaintiff's seventh motion *in limine* to exclude the deposition testimony of Dr. Robert Herrick, Defendants' medical expert, is DENIED. Federal Rule of Civil Procedure 32(a)(4) provides that "[a] party may use for any purpose the deposition of a witness, whether or not a party, if . . . the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition." At the time of trial, Dr. Herrick will be on a vacation which could not be rescheduled, and which will place him more than 100 miles from the courthouse. *See* Dkt. No. 170 at 2. His absence was not procured by Defendants; indeed, Dr. Herrick was available for trial when it was originally scheduled on June 28, 2016. *See* Dkt. No. 32; Dkt. No. 170 at 2.

---

[2] For that matter, Plaintiff also cannot testify that he has a personality that would make it less likely that he was combative toward Rodriguez. *Cf. Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir.1993) ("'[C]haracter evidence' is normally not admissible in a civil rights case.").

Case No.: 5:14-cv-03387-EJD
SECOND ORDER RE: MOTIONS *IN LIMINE*
4

1 Defendants also were not aware of Mr. Herrick's travel plans at the time the Court scheduled the current trial date. *See* Dkt. No. 79; Dkt. No. 170 at 2. Further, it does not appear that Plaintiff would be prejudiced by Dr. Herrick's testifying by deposition. Plaintiff was notified before Dr. Herrick's deposition that Dr. Herrick would not be available for trial. Dkt. No. 170 at 4. As such, he had full opportunity to cross-examine Dr. Herrick on the entirety of his testimony, just as he would have had at trial.

Plaintiff's eighth motion *in limine* to exclude Defense Exhibit 1032 is GRANTED IN PART and DENIED IN PART. Defense Exhibit 1032 is a report prepared by Dr. Ronald Roberts, a psychologist in Dr. Levy's group who administered a series of psychological tests. Dr. Levy relied on these test results, in combination with his own face-to-face interview of Plaintiff, in forming his opinions. Dr. Roberts is available to testify at trial; however, he was not himself disclosed as an expert.

Dr. Roberts's report, in and of itself, is hearsay, and thus inadmissible. Fed. R. Evid. 801, 802. It, on the whole, does not fall into any hearsay exception (including, as argued by Defendants, the business records exception, a statement made for the purposes of medical diagnosis, and the residual exception). *See* Fed. R. Evid. 803; *see also Arizona, Dep't of Law, Civil Rights Div. v. ASARCO, L.L.C.*, 844 F. Supp. 2d 957, 965 (D. Ariz. 2011) (forensic psychiatric evaluation "falls within no hearsay exception for reports or records, because it was plainly prepared in anticipation of litigation by a non-treating mental health expert"). Nevertheless, because Dr. Roberts will be available at trial, he may testify as a fact witness as to its contents, including, for example, what tests he conducted and what the results were. He may not, however, provide expert testimony.

Further, Federal Rule of Evidence 703 provides that:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the

Case No.: 5:14-cv-03387-EJD
SECOND ORDER RE: MOTIONS *IN LIMINE*

5

jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703. Dr. Roberts' report qualifies as "facts or data" that "experts in [Dr. Levy's] field would reasonably rely on," as it discloses the results of medical tests administered by a fellow physician within his own practice group. Accordingly, Dr. Levy may properly rely on it in forming his opinions.[3] In addition, particular excerpts of Dr. Roberts' report which merely recount the tests he administered and their results may qualify as "facts or data" whose "probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect," and would thus be admissible under Rule 703. If Defendants seek to admit certain excerpts under this exception, they shall prepare a redacted version of Dr. Roberts' report containing only these excerpts. The parties shall meet and confer regarding Defendants' proposed redactions and, should any disputes remain outstanding, inform the Court no later than **July 27, 2018 at 4:00 p.m.**

Finally, the Court cautions Defendants, that, even if Dr. Levy can rely on Dr. Roberts' report and the test results it discloses, Dr. Levy cannot be a mouthpiece for Dr. Roberts. *See Villagomes v. Lab. Corp. of Am.*, No. 2:08-cv-00387-RLH-GWF, 2010 WL 4628085, at *4 (D. Nev. Nov.8, 2010) ("A testifying expert may rely on the opinions of non-testifying experts as a foundation for the opinions within the testifying expert's field of expertise. Rule 703, however, is not a license for an expert witness to simply parrot the opinions of non-testifying experts."); *see also Matter of James Wilson Assoc.*, 965 F.2d 160, 172-173 (7th Cir.1992) ("The architect could use what the engineer told him to offer an opinion within the architect's domain of expertise, but he could not testify for the purpose of vouching for the truth of what the engineer had told him— of becoming in short the engineer's spokesman."). Accordingly, to the extent that Dr. Roberts' report contains opinions that require qualification as an expert, Defendants cannot introduce them

---

[3] This applies to the raw results of Dr. Roberts' testing, as well as any conclusions he reaches. *See Hunter v. Cty. of Sacramento*, No. 2:06-CV-00457-GEB, 2013 WL 684649, at *2 (E.D. Cal. Feb. 22, 2013) (Defendants have not shown that an expert witness may never rely upon information provided by another expert in forming his or her opinions.); *United States Gypsum v. LaFarge North American, Inc.*, 670 F.Supp.2d 748, 758 (N.D.Ill.2009) ("It is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the expert.").

Case No.: 5:14-cv-03387-EJD
SECOND ORDER RE: MOTIONS *IN LIMINE*
6

by parroting them through Dr. Levy.

Plaintiff's ninth motion *in limine* to exclude Defense Exhibit 1008, a letter of reprimand ("LOR") from Col. Doral Sandlin, is GRANTED IN PART and DEFERRED IN PART. While the LOR itself is hearsay, *see* Fed. R. Evid. 801, it may be admissible under the business records exception, which exempts from the rule against hearsay

> [a] record of an act, event, condition, opinion, or diagnosis if:
>
> (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) neither the opponent does not show that the source of information nor or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). Here, Col. Sandlin will be available to testify at trial, Dkt. No. 113, and may be able to provide sufficient testimony to establish that the LOR falls within the business records exception. The Court DEFERS ruling on the issue of whether it is admissible as a business record until trial.

Nevertheless, under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Here, the LOR is relevant and has probative value with respect to Plaintiff's Bane Act[4] claim: Plaintiff contends that Dep. Rodriguez's December 13

---

[4] As discussed below with respect to Defendants' eighth motion *in limine*, Dep. Rodriguez's visit to the Naval Postgraduate School ("NPS"), or any of the events which it exclusively triggered, is not relevant to the issue of whether the Fourth Amendment violations that Dep. Rodriguez allegedly committed in front of Plaintiff's house proximately caused Plaintiff's alleged loss of his

visit to the Naval Postgraduate School ("NPS") ("the NPS Visit") proximately caused him to lose his military career and future earnings, and the LOR provides the jury with helpful information on these proximate cause and damages issues. Nevertheless, certain aspects of it pose a substantial risk of creating unfair prejudice and confusion of issues. For example, the LOR itself recounts the events of December 13, which could entice the jury to substitute Colonel Sandlin's assessment of what happened that night for their own. In addition, the LOR contains changed language such as "disgrace and dishonor," which may unduly inflame the passions of the jury. Accordingly, even if Defendants are able to establish that the LOR qualifies as a business record under Rule 803(6), it may only be admitted as excerpts or in redacted form. If Defendants seek to admit the LOR, they shall prepare a redacted version of Exhibit 1008 that is consistent with this ruling. The parties shall meet and confer regarding Defendants' proposed redactions and, should any disputes remain outstanding, inform the Court no later than **July 27, 2018 at 4:00 p.m.**

Finally, Plaintiff is cautioned that, consistent with the Court's ruling on Defendants' eighth motion *in limine*, the LOR falls within the category of evidence that exclusively relates to events that were triggered the NPS Visit. As such, it is only relevant to Plaintiff's Bane Act claim, and can only be admitted for the purpose of determining whether the NPS Visit proximately caused the loss of military career that Plaintiff claims.

Plaintiff's tenth motion *in limine* to exclude Defense Exhibit 1028, a printout of California Penal Code § 834a is DENIED AS MOOT. At the July 12, 2018 pretrial conference, Defendants agreed to use this printout as a demonstrative only.

II. **DEFENDANTS' MOTIONS**

Defendants' first motion *in limine* to exclude evidence that is too remote in time or space is DEFERRED. As discussed on the record at the July 12, 2018 pretrial conference, Plaintiff shall review the challenged exhibits and further select the documents which he believes are relevant and intends to show to the jury. The parties shall meet and confer regarding Plaintiff's proposed

---

military career. The LOR, as well as corresponding testimony from Col. Sandlin, falls within this category of exclusively triggered events.

Case No.: 5:14-cv-03387-EJD
SECOND ORDER RE: MOTIONS *IN LIMINE*
8

selections and, should any disputes remain outstanding, inform the Court no later than **July 27, 2018 at 4:00 p.m.**

Defendants' third motion *in limine* to exclude evidence relating to Plaintiff's decision to move is DENIED. As the Ninth Circuit has explained,

> [a] plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations. Such damages are calculated in most circumstances according to general tort law principles applicable to the types of deprivations proved. The victim of the constitutional deprivation is entitled to compensation for economic harm, pain and suffering, and mental and emotional distress that results from the violations.

*Borunda v. Richmond*, 885 F.2d 1384, 1389 (9th Cir. 1988) (internal citations omitted). Here, Plaintiff asserts that, after the events of December 13, he felt uncomfortable living in his own home and wanted to move. Dkt. No. 158; Compl. ¶ 34. Thus, reasonable moving expenses "if proved to the jury's satisfaction to be the consequence of [Defendants'] illegal conduct," *id*., fall within the range of economic harm for which he may be entitled to compensation. Accordingly, evidence relating to Plaintiff's decision to move is relevant. Fed. R. Evid. 401. At trial, Plaintiff will have the burden of proving that, should the jury find Defendants liable, their predicate conduct proximately caused Plaintiff to move and reasonably incur these expenses.

Defendants' fifth motion *in limine* to exclude promotional or recruiting videos is DEFERRED. At the July 12, 2018 pretrial conference, Plaintiff represented that he intends to only show one two-minute promotional video. Plaintiff shall provide a copy of this proposed excerpt to Defendants. The parties shall meet and confer regarding Plaintiff's proposed excerpt and, should any disputes remain outstanding, inform the Court no later than **July 27, 2018 at 4:00 p.m.**

Defendants' sixth motion *in limine* to exclude Stanley Kephart, Plaintiff's police practices expert, from testifying at trial is GRANTED IN PART and DENIED IN PART. Mr. Kephart may testify at trial, subject to the same restrictions the Court imposed on Mr. Cameron in its rulings above on Plaintiff's second and fourth motions *in limine*. Plaintiff is cautioned that certain

Case No.: 5:14-cv-03387-EJD
SECOND ORDER RE: MOTIONS *IN LIMINE*
9

opinions contained in Mr. Kephart's report run afoul of these restrictions and will not be permitted at trial. *See, e.g.*, Ex A at 4 ("[t]he standard of care for a reasonable, prudent Patrol Deputy in the same or similar circumstance required meeting with the complaining witness and, through investigation, formulating reasonable suspicion and probable cause for the subsequent arrest of Captain Aquino"), 5 ("Deputy Rodriguez breached the standard of care . . .").

Defendants' eight motion *in limine* to exclude evidence of any impact on Plaintiff's military career is GRANTED IN PART and DENIED IN PART.

The parties' dispute centers around a single event: Dep. Rodriguez's visit to NPS ("the NPS Visit"). As the parties agree, after the confrontation that took place in front of Plaintiff's house, Dep. Rodriguez reported to NPS, where he spoke with federal police lieutenant Eric Glazier, and shared with him the events that transpired in front of Plaintiff's house. Plaintiff theorizes that this report launched a series of events that culminated in Plaintiff's discharge from the Air Force and loss of his military career.

Much is in dispute about the NPS Visit. Dep. Rodriguez and Mr. Glazier, both available to testify at trial, disagree as to the substance of their conversation, including whether and to what extent Dep. Rodriguez asked about Plaintiff's obligation to maintain control over his identification. Dkt. No. 131-1, Ex. A, at ¶ 5. The parties also disagree about the purpose of the NPS Visit. According to Plaintiff, "the only reason Dep. Rodriguez went to NPS was to give Plaintiff's employer his own version of the events that transpired." Dkt. No. 197 at 2. Plaintiff claims that, as such, the NPS Visit was an "effort to obstruct [Plaintiff]'s ability to assert his right to freedom from unreasonable seizure" which violated the Bane Act.[5] *Id.* (quoting *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 804, 225 Cal. Rptr. 3d 356, 386 (Ct. App. 2017),

---

[5] The Bane Act provides a claim for relief "against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 331 (1998). "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or [forced] the plaintiff to do something that he or she was not required to do under the law. *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883, 57 Cal. Rptr. 3d 454, 472 (2007).

Case No.: 5:14-cv-03387-EJD
SECOND ORDER RE: MOTIONS *IN LIMINE*
10

as modified (Nov. 17, 2017), review denied (Feb. 28, 2018)). Defendants, on the other hand, claim that Dep. Rodriguez visited NPS for the purpose of investigating whether Plaintiff violated California Penal Code § 148(a)(1). Dkt. No. 195 at 2. Plaintiff's legal excuse for refusing to allow Dep. Rodriguez to inspect his identification was that the military prohibited him from doing so; thus, Defendants argue, Dep. Rodriguez visited NPS for the purpose of investigating whether this was a real defense that Plaintiff could claim. *Id.*

With this in mind, it appears that the NPS Visit—and all the events which Plaintiff claims flowed from it and arguably resulted in Plaintiff's lost military career—serves two primary functions in Plaintiff's case: (1) it is the single link in the chain of causation which connects the alleged Fourth Amendment violations committed at Plaintiff's house to Plaintiff's alleged loss of his military career; and (2) it, itself, is an instance of "threats, intimidation, or coercion" which forms the basis of Plaintiff's Bane Act claim. Thus, to decide the instant motion, the Court must evaluate the relevance of the NPS Visit for each of these purposes.

First, as to causation, the Court finds that the NPS Visit is not relevant to the issue of whether the Fourth Amendment violations allegedly committed in front of Plaintiff's house proximately caused Plaintiff's alleged loss of his military career. As discussed above, a Plaintiff who suffers constitutional violations is entitled to compensation for any injuries that were proximately caused by those violations. *Borunda*, 885 F.2d at 1389. However, an intervening event that was "abnormal or unforeseen" (i.e., not "within the scope of the original risk and therefore [not] foreseeable") will break the chain of proximate causation. *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir.1996). Whether an event is an intervening cause is something that a court can determine as a matter of law. *See id.* ("we must determine whether, as a matter of law, Stanewich's private actions were intervening causes").

Here, even construing all of the facts in the light most favorable to Plaintiff, it is clear that Dep. Rodriguez's independent decision to visit NPS is, as a matter of law, an intervening force. When Dep. Rodriguez decided to, for example, physically detain Plaintiff, put Plaintiff in handcuffs and the patrol car, or search Plaintiff's wallet and residence, he could not have

Case No.: 5:14-cv-03387-EJD
SECOND ORDER RE: MOTIONS *IN LIMINE*
11

reasonably foreseen that this would have led him to later visit NPS. Instead, the NPS Visit stands alone as its own adventure, which, under either party's theory, sprung separately from a later decision to embark on that specific course of action (i.e., whether, as Plaintiff argues, to "threat[en], intimidate[e], or coerc[e]" Plaintiff into not asserting his Fourth Amendment rights, or whether, as Defendant argues, to investigate Plaintiff's potential violation of California Penal Code § 148(a)(1)). Accordingly, the Fourth Amendment violations which Dep. Rodriguez allegedly committed outside Plaintiff's house did not proximately cause the NPS Visit, or any of the subsequent events it exclusively triggered. Because of this, the NPS Visit is not relevant to the issue of whether the Fourth Amendment violations that Dep. Rodriguez allegedly committed in front of Plaintiff's house proximately caused Plaintiff's alleged loss of his military career. Fed. R. Evid. 401. Plaintiff cannot admit any testimony or evidence of the NPS Visit, or the events that it exclusively triggered, for this purpose.[6]

Second, as to Plaintiff's Bane Act claim, this presents a different situation. Under Plaintiff's theory, the NPS Visit is itself an instance of "threats, intimidation, or coercion" which violates the Bane Act, because it was allegedly an effort to "tattle" on Plaintiff and chill his assertion of his Fourth Amendment rights. Dkt. No. 197. As such, it forms the basis of Defendants' Bane Act liability. Thus, the NPS Visit would ordinarily be relevant to prove an element of the claim, and the events it proximately caused and the injuries that Plaintiff suffered as a result would be relevant to prove damages. *See* Fed. R. Evid. 401.

However, here, Defendants argue that Dep. Rodriguez cannot be liable for the NPS Visit under the Bane Act because the purpose of this visit was to investigate Plaintiff's potential

---

[6] This is not to say, however, that Plaintiff is precluded from arguing that the Fourth Amendment violations allegedly committed in front of his house caused him to lose his military career. For example, the Court's ruling would not prevent Plaintiff from testifying "Dep. Rodriguez did X, and as a result I lost my military career" (provided, of course, this testimony is otherwise admissible). However, Plaintiff is cautioned that he will still bear the burden of proving his entitlement to damages, i.e., that the alleged constitutional violations proximately caused the damages he claims. Thus, a threadbare assertion that he suffered a loss of his military career without proof by admissible evidence will not suffice, and may provide fertile grounds for a Rule 50 motion.

Case No.: 5:14-cv-03387-EJD
SECOND ORDER RE: MOTIONS *IN LIMINE*
12

violation of California Penal Code § 148(a)(1) and thus, he is shielded from liability under California Government Code § 821.6. If the NPS Visit was as Defendants contend, Dep. Rodriguez would indeed be shielded from liability. Under section 821.6, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6. This protection extends to actions "incidental to the investigation of crimes." *See Amylou R. v. Cnty. of Riverside*, 28 Cal. App. 4th 1205, 1211 (1994). The touchpoint is whether the actions are "causally connected to the investigation and prosecution." *Cty. of L.A. v. Superior Court*, 181 Cal. App. 4th 218, 230, 104 Cal. Rptr. 3d 230 (2009). Here, if it were the case that Dep. Rodriguez visited NPS to investigate whether, for example, the military required Plaintiff to maintain positive control over his identification and thus had a legal excuse to not hand over his identification to Dep. Rodriguez, this would be "causally connected" to the investigation of Plaintiff's potential violation of California Penal Code § 148(a)(1), and Dep. Rodriguez would be entitled to § 821.6 immunity for Plaintiff's Bane Act claim.

However, at this stage, the nature of the NPS Visit is hotly contested. There are outstanding factual disputes regarding whether this visit had any connection to the potential § 148(a)(1) violation, as well as what exactly was said during this visit and what Dep. Rodriguez's intentions were. These factual questions about the nature of the NPS Visit (i.e., whether it was investigatory, as Defendants argue, or purely an instance of "threats, intimidation, or coercion" as Plaintiff argues) must be left for the jury.

In light of the foregoing, the Court, at this stage, will permit testimony and evidence of the NPS Visit for the limited purpose of determining whether (1) it was investigatory (which would entitle Dep. Rodriguez to § 821.6 immunity and shield him from Bane Act liability), and (2) if not, it was an instance of "threats, intimidation, or coercion" which "interfere[d]" or attempted to "interfere[]" with Plaintiff's "exercise or enjoyment of rights secured by federal or state law." The Court will also permit evidence and testimony relating to events that were triggered by the NPS

Visit for the purpose of determining whether the NPS Visit proximately caused the loss of military career that Plaintiff claims. However, the parties are cautioned that the jury's consideration of this evidence should be limited to the question of proximate cause. The jury should not be asked, for example, to question the quality of the military's proceedings against Plaintiff or second-guess whether the military's decision to discharge Plaintiff was correct. Instead, the evidence presented to the jury should generally be limited to the investigation the military performed, the proceedings the military conducted, the opportunities Plaintiff had to respond, and the actions that were taken as a result. Other evidence is not relevant to the question of proximate cause, and, even if it had some small relevance, it would be substantially outweighed by the risk of prejudice and confusion. Fed. R. Evid. §§ 401, 403.

In summary, the Court GRANTS Defendants' eighth motion *in limine* to the extent that the NPS Visit and events which it exclusively triggered cannot be admitted to show that the Fourth Amendment violations that Dep. Rodriguez allegedly committed in front of Plaintiff's house proximately caused Plaintiff's alleged loss of his military career. However, the Court DENIES Defendants' motion to the extent that the NPS Visit and the events it triggered can be admitted for the purposes of determining whether (1) Dep. Rodriguez is entitled to § 821.6 immunity and (2) if not, whether the NPS Visit was an instance of "threats, intimidation, or coercion" which violated the Bane Act.

Defendants' ninth motion *in limine* to exclude testimony from Eric Glazier is DENIED for the reasons discussed with respect to Defendants' eighth motion *in limine*, *supra*. Mr. Glazier will be permitted to testify regarding his personal recollection of Dep. Rodriguez's visit to NPS. Also, to the extent he has personal knowledge, he will be permitted to testify regarding the procedures and processes that this visit triggered. Plaintiff, nevertheless, is cautioned that Mr. Glazier's testimony cannot stray beyond his personal knowledge, nor can he provide testimony that would only be appropriate from an expert.

Defendants' twelfth motion *in limine* to exclude evidence relating to the search of Plaintiff's wallet is DENIED. Defendants base their request on a single case, *McArthur v. City*

Case No.: 5:14-cv-03387-EJD
SECOND ORDER RE: MOTIONS *IN LIMINE*
14

*and County of San Francisco*, where Judge Alsup concluded that "[t]he law, as yet, is not 'clearly established' that taking identification from a suspect's wallet is impermissible." 190 F. Supp. 3d 895 (2016) (citations omitted). However, in that case, the alleged Fourth Amendment violation was unreasonable *seizure* of a suspect's identification. Here, the alleged Fourth Amendment violation is an unreasonable *search* of Plaintiff's wallet. Indeed, the Court clarified this point in its summary judgment order and rejected Defendants' plain view theory on this basis:

> . . . the plain view doctrine was developed in the context of seizures, not searches. Thus, even assuming the plain view requirements were satisfied here, invoking the doctrine for the purposes of seizing the wallet does not necessarily warrant its search. *United States v. Cornejo*, 598 F.2d 554, 556 (9th Cir. 1979) ("The lawfulness of the seizure of the purse does not justify the search of its contents; although the purse itself was in plain view, its contents were not."). As the Third Circuit explained in addressing this same issue, "[t]he plain view doctrine does not authorize an otherwise unauthorized search…Indeed, the plain view doctrine does not authorize *searches*; by definition, it only authorizes *seizures* of items in plain view to which the officer has a right of access." *United States v. Rivera-Padilla*, 365 F. App'x 343, 346 (3d Cir. 2010) (emphasis in original).
>
> Based on the foregoing, the court finds that the plain view doctrine is inapplicable here to warrant Dep. Rodriguez's search of Plaintiff's wallet. Defendants advance no additional theory or argument in support of the lawfulness of the search. Finding no valid basis for the search, the court determines that the search of Plaintiff's wallet was unjustified and judgment in favor of Plaintiff is therefore warranted.

Dkt. No. 56 at 17-18. Accordingly, the Court declines Defendants' invitation to reconsider its decision at summary judgment that Dep. Rodriguez is not entitled to qualified immunity for his search of Plaintiff's wallet, and the damages that Plaintiff is entitled to for this unreasonable search remains an issue for trial. As such, evidence relating to the search of the wallet is relevant, Fed. R. Evid. 401, and will not be precluded on this basis.

Defendants' thirteenth motion *in limine* to exclude evidence regarding emotional distress is DENIED. As explained above with respect to Defendants' third motion *in limine*, "[t]he victim of the constitutional deprivation is entitled to compensation for . . . mental and emotional distress that results from the violations." *Borunda*, 885 F.2d at 1389. Here, Plaintiff claims that Defendants'

Case No.: 5:14-cv-03387-EJD
SECOND ORDER RE: MOTIONS *IN LIMINE*
15

conduct caused him to "suffer[] severe emotional and mental distress." Compl. ¶ 35. As such, evidence of any emotional distress that was proximately caused by conduct for which Defendants can be found liable is relevant. Fed. R. Evid. 401. Plaintiff will have the burden of establishing proximate cause at trial, and the jury will determine the extent to which he is successful.

Defendants' fourteenth motion *in limine* to exclude evidence that is exclusively related to the malicious prosecution claim is GRANTED IN PART and DENIED IN PART. To the extent Defendants' motion challenges evidence which the Court determined was admissible in its discussion of Defendants' eighth motion *in limine* above, Defendants' fourteenth motion *in limine* is DENIED. However, Defendants' motion is otherwise GRANTED. The Court rejected Plaintiff's malicious prosecution claim at summary judgment; thus, evidence exclusively relating to this claim is not relevant. In addition, Dep. Rodriguez is entitled to § 821.6 immunity for actions "causally connected to the investigation and prosecution" of Plaintiff's potential violation of § 148(a)(1). *Cty. of L.A.*, 181 Cal. App. 4th at 230. Thus, these actions cannot form the basis of any claims against Dep. Rodriguez.

Defendants' fifteenth motion *in limine* to preclude Richard Herbel, Plaintiff's military records expert, from testifying is GRANTED. As discussed with respect to Defendants' eighth motion *in limine*, the evidence which is relevant to Plaintiff's Bane Act claim and theory of lost military career is limited. Multiple military fact witnesses, including Col. Sandlin and Mr. Glazier, will be available to testify at trial, and, as the Court currently sees it, should be sufficient to provide this information. Expert testimony is unnecessary.

**IT IS SO ORDERED.**

Dated: July 24, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:14-cv-03387-EJD
SECOND ORDER RE: MOTIONS *IN LIMINE*
16